

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-11-00472-CR

| | | |
|---|---|---|
| Tyra Ann Whitney | § | From Criminal District Court No. 1 |
| | § | of Tarrant County (1217006D) |
| v. | § | February 28, 2013 |
| | § | Opinion by Justice Gabriel |
| The State of Texas | § | (p) |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgment. It is ordered that the judgment of the trial court is affirmed.

SECOND DISTRICT COURT OF APPEALS


By_____
Justice Lee Gabriel



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 02-11-00472-CR

TYRA ANN WHITNEY                                                        APPELLANT

V.

THE STATE OF TEXAS                                                            STATE

----------

## FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### Introduction

Appellant Tyra Ann Whitney appeals her conviction for murder, contending in three issues that the trial court erred by (1) denying co-counsel's active participation during trial, (2) issuing a no-duty-to-retreat instruction in the jury charge, and (3) denying a mistrial after sustaining an objection to the State's closing argument. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## Background Facts and Procedural History

Appellant killed her daughter Tashira's boyfriend with a hammer. Tashira and the deceased often quarreled, at times violently. During their last argument, Tashira called Appellant, who then drove to Tashira's apartment. A neighbor saw Appellant climb out of her van and walk to the apartment holding a yellow handled hammer.

The deceased was gathering his belongings in the bedroom when the Appellant came through the unlocked apartment door. She and the deceased started arguing and continued to do so after Tashira closed the bedroom door between them. When the door reopened the deceased approached Appellant. It is unclear from the record whether he intended to attack Appellant or to escape past her out the front door. Before he could do either, Appellant threw a cup of bleach-water into his face. He fell facedown to the floor, and Appellant struck him in the back of the head with the hammer.

As Appellant walked back to her van, the neighbor who had seen her arrive noticed that the hammer in her hand had blood on it. Appellant explained as she left, "I told you I was gonna kill that n[. . . ]—if he ever laid a hand on my daughter again."

The deceased died from his injuries shortly thereafter, and the State charged Appellant with murder.

Appearing before a magistrate, Appellant submitted a written election-of-counsel form, with supporting affidavit of indigency attached, requesting a court-

appointed lawyer. The magistrate found Appellant indigent and appointed attorney William Harris ("Counsel") for her defense.

Appellant's daughter Tashira had given two statements to the police: one oral, recorded in a detective's vehicle, and the other written at the police station. But she did not talk with anyone from the district attorney's office before trial. Four or five times, however, Tashira met with the defense, to discuss her testimony—the last time in the week before trial.

A visiting judge presided over Appellant's trial. On the first day during jury selection, she introduced Counsel and Wes Bearden to the venire as the attorneys that represented Appellant. Counsel conducted Appellant's portion of voir dire, and after empanelling a jury, the trial court recessed until the morning.

The next day, outside the jury's presence, the visiting judge reported that the elected judge of the trial court had instructed her not to allow Bearden to actively participate in the trial because he had not been appointed as Appellant's counsel or co-counsel. The trial court noted, however, that Bearden could remain in the courtroom and "assist" Counsel "in any fashion" other than "actively questioning witnesses and making objections and things of that nature." Counsel objected to this arrangement and Appellant expressed her desire to have Bearden fully participate under Counsel's supervision. The trial court overruled the objection but granted a running objection on the issue.

The jury convicted Appellant of murder and, after the punishment phase, assessed punishment at fifteen years' confinement, finding that she had acted

4

under the immediate influence of sudden passion arising from an adequate cause.[2] The trial court sentenced Appellant accordingly.

### Denial of Co-counsel

In her first issue, Appellant contends that the trial court denied her constitutional right to choose co-counsel to assist her court-appointed counsel at trial.[3] Appellant cites *Powell v. Alabama*, 287 U.S. 45, 53, 53 S. Ct. 55, 58 (1932), for the proposition that the Sixth Amendment right to the assistance of counsel "includes the right of the accused to counsel of [her] choice if counsel is retained or volunteers pro bono." But this right to choose counsel does not extend to defendants who have counsel appointed for them by the court. *United States v. Gonzalez–Lopez*, 548 U.S. 140, 151, 126 S. Ct. 2557, 2565 (2006); *United States v. Benitez-Casas*, 439 F.App'x 307, 308 (5th Cir. 2011); *see Montejo v. Louisiana*, 556 U.S. 778, 784, 129 S. Ct. 2079, 2084 (2009) ("An

---

[2]Murder is a second-degree felony if, at the punishment phase, the defendant proves by a preponderance of the evidence that she acted under the influence of sudden passion arising from an adequate cause. Tex. Penal Code Ann. § 19.02(d) (West 2011). The penal code defines "sudden passion" as "passion directly caused by and arising out of provocation by the individual killed" arising "at the time of the offense" and "not solely the result of former provocation." *Id*. § 19.02(a)(2). "'Adequate cause' means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id*. § 19.02(a)(1).

[3]Because she does not argue that our state constitution or any statute provides greater protection than the Sixth Amendment of the United States Constitution, we treat Appellant's first issue solely as a Sixth Amendment claim. *See Trammell v. State*, 287 S.W.3d 336, 342 n.12 (Tex. App.—Fort Worth 2009, no pet.).

indigent defendant has no right to choose his counsel[.]") (citing *Gonzalez–Lopez*, 548 U.S. at 151, 126 S. Ct. 2557).

The United States Supreme Court has not addressed the specific issue of whether the Sixth Amendment guarantees any right for an indigent defendant to choose *co-counsel* to assist counsel that has been appointed by the trial court. But in *Trammell*, this court resolved the issue adversely to Appellant's position. 287 S.W.3d at 343–44.

In *Trammell*, we noted that the Supreme Court has considered whether "a trial court's erroneous deprivation of a criminal defendant's choice of counsel entitles him to a reversal of his conviction." *Id.* at 342 (citing *Gonzalez–Lopez*, 548 U.S. at 142, 126 S. Ct. at 2560).[4]  Analyzing the argument that the trial court had denied the defendant his Sixth Amendment right to "paid counsel of his choosing," the Supreme Court noted that it had previously held that "a defendant *who does not require appointed counsel* [has the right] to choose who will represent him." *Id.* (citing *Gonzalez–Lopez*, 548 U.S. at 144, 126 S. Ct. at 2561) (emphasis added)).  It then reversed the conviction because it decided that the trial court violated the appellant's right to counsel of his choice, which it held was

_____

[4]In *Gonzalez–Lopez*, the federal trial court had denied pro hac vice admission to the defendant's desired out-of-state retained counsel, and it had refused to allow that counsel to have contact with defendant's local counsel during trial; it even ordered a United States Marshal to sit between the two.  *Id.* (citing *Gonzalez–Lopez*, 548 U.S. 142–43, 126 S. Ct. at 2560).

a structural error that required no showing of harm. *Id.* (citing *Gonzalez–Lopez*, 548 U.S. at 144–52, 126 S. Ct. at 2561–66).

But the Supreme Court explicitly limited its holding in *Gonzalez–Lopez* to cases in which defendants do not have court-appointed counsel: "Nothing we have said today casts any doubt or places any qualification upon our previous holdings that limit the right to counsel of choice . . . . *[T]he right to counsel of choice does not extend to defendants who require counsel to be appointed for them.*" *Id.* at 343 (citing *Gonzalez–Lopez*, 548 U.S. at 151, 126 S. Ct. at 2565 (emphasis added)); *see United States v. Rincon*, 223 F.App'x 331, 331 (5th Cir. 2007) ("*Gonzalez–Lopez* clearly distinguishes itself from situations involving appointed counsel."); *see also Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624, 109 S. Ct. 2646, 2652 (1989) (stating that the Sixth Amendment "guarantees defendants in criminal cases the right to adequate representation, but those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts").

Similarly, Texas courts, including ours, have specifically held that an indigent defendant does not have a right to the counsel of his own choosing. *See Trammell*, 287 S.W.3d at 343–44; *Maes v. State*, 275 S.W.3d 68, 71 (Tex. App.—San Antonio 2008, no pet.) ("A defendant does not have the right to choose appointed counsel, and unless he waives his right to counsel and chooses to represent himself, or shows adequate reasons for the appointment of

7

new counsel, he must accept court-appointed counsel."); *Long v. State*, 137 S.W.3d 726, 735 (Tex. App.—Waco 2004, pet. ref'd); *Garner v. State*, 864 S.W.2d 92, 98 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd) (indicating that an indigent defendant "must accept the counsel appointed by the court"); *see also United States v. Hughey*, 147 F.3d 423, 428 (5th Cir.) (relating that the "Sixth Amendment right to counsel of choice is limited, and protects only a paying defendant's fair or reasonable opportunity to obtain counsel of the defendant's choice"), *cert. denied*, 525 U.S. 1030 (1998).

Also, Texas cases expressing that a defendant's Sixth Amendment rights are protected when he has effective assistance from either retained or appointed counsel weigh against Appellant's position. *Trammell*, 287 S.W.3d at 343; *see Malcom v. State*, 628 S.W.2d 790, 791 (Tex. Crim. App. [Panel Op.] 1982) (stating that once "the court has appointed an attorney to represent the indigent defendant, the defendant has been accorded the protections provided under the Sixth and Fourteenth Amendments"); *Montemayor v. State*, 55 S.W.3d 78, 88–89 (Tex. App.—Austin 2001, pet. ref'd) (holding that the trial court properly removed the defendant's appointed counsel when the defendant retained other counsel); *Ex parte Williams*, 870 S.W.2d 343, 348 (Tex. App.—Fort Worth 1994, pet. ref'd) (reciting that a defendant "has the right to have counsel appointed if retained counsel cannot be obtained") (quoting *Strickland v. Washington*, 466 U.S. 668, 685, 104 S. Ct. 2052, 2063 (1984)); *Hazelwood v. State*, 838 S.W.2d 647, 649 (Tex. App.—Corpus Christi 1992, no pet.) (explaining that an accused has the

right "to be represented by *either* retained or court-appointed counsel") (emphasis added).

Accordingly, we hold that the trial court did not violate the Sixth Amendment when it excluded Bearden from actively participating as co-counsel alongside Appellant's court-appointed counsel, and we overrule Appellant's first issue. *See Gonzalez–Lopez*, 548 U.S. at 151, 126 S. Ct. at 2565; *Trammell*, 287 S.W.3d at 343–44.

### No-Duty-to-Retreat Instruction

In her second issue, Appellant contends that the trial court erred by including in its charge to the jury an instruction that Appellant concedes tracks a penal code provision regarding a duty to retreat. She complains of the following instruction:

> A defendant who has a right to be present at the location where the force is used, who has not provoked the person against whom the force is used, and who is not engaged in criminal activity at the time the force is used is not required to retreat before using force in self-defense.

Although Appellant concedes that this instruction tracks the penal code, *see* Tex. Penal Code Ann. § 9.31(e) (West 2011), she argues that because the legislature eliminated the statutory duty to retreat in 2007, the trial court erred by including this instruction in the charge because it implies that there *is* a duty to retreat. In other words, Appellant argues that the charge was erroneous because it "implied the existence of a non-existent duty."

Prior to September 1, 2007, section 9.32 of the penal code provided that the use of deadly force was justified only "if a reasonable person in the actor's situation would not have retreated." *See* Act of May 16, 1995, 74th Leg., R.S., ch. 235, § 1, 1995 Tex. Gen. Laws 2141, 2141–42 (amended 2007) (current version at Tex. Penal Code Ann. § 9.32 (West 2011)). However, effective September 1, 2007, the 80th Legislature amended the statute to delete existing language regarding a general duty to retreat and to add new language specifying the circumstances under which a person *does not* have a duty to retreat. *Morales v. State*, 357 S.W.3d 1, 4–5 (Tex. Crim. App. 2011). The legislature deleted from penal code section 9.32(a)(2) the language "if a reasonable person in the actor's situation would not have retreated; and," and it added the following that now appears in section 9.32(c):

> A person who has a right to be present at the location where the deadly force is used, who has not provoked the person against whom the deadly force is used, and who is not engaged in criminal activity at the time the deadly force is used is not required to retreat before using deadly force as described by this section.

Act of Mar. 20, 2007, 80th Leg., R.S., ch. 1, § 3, secs. 9.31, 9.32, 2007 Tex. Gen. Laws 1, 2 (current version at Tex. Penal Code Ann. § 9.32(c) (West 2011)).

Section 9.31(e) was added at the same time and differs from section 9.32(c) only by omitting "deadly" before each of the four appearances of the word "force." It reads as follows:

> A person who has a right to be present at the location where the force is used, who has not provoked the person against whom the force is used, and who is not engaged in criminal activity at the time

the force is used is not required to retreat before using force as described by this section.

*Id.* at 1 (current version at Tex. Penal Code Ann. § 9.31(e) (West 2011)).[5]

Appellant's characterization of the duty to retreat as "non-existent" may be too strong. In *Morales*, the court of criminal appeals addressed the changes made to the self-defense statute by the 80th Legislature, specifically, the no-duty-to-retreat provisions at issue here. 357 S.W.3d at 4–6. One of Morales's grounds for review asked, "Whether the 2007 amendment to the self-defense statute eliminated the duty to retreat in a self-defense case." *Id.* at 4, n.4. Although the opinion does not specifically address this question, it implies that the duty to retreat is not, in Appellant's words, "non-existent." First, the court acknowledged that when the provisions apply, the defendant has no duty to retreat. *Id.* at 5. Then, in discussing the "no duty to retreat provisions," the court stated that when "these provisions do not apply, the failure to retreat may be considered in determining whether a defendant reasonably believed that his

---

[5]In conceding that the instruction tracks the penal code, Appellant cites section 9.32(c). Actually, the court's charge more closely tracks section 9.31(e). But given the similarity of the two provisions—9.32(c) refers to "deadly force" whereas 9.31(e) refers only to "force"—and given that neither side has made an issue of the trial court's using language from 9.31(e) as opposed to 9.32(c), the distinction between the two statutes is not germane to our disposition of this appeal.

11

conduct was immediately necessary to defend himself or a third person."[6]  *Id.*

Further, the court wrote, when the provisions do not apply, the prosecutor

> may argue the failure to retreat as a factor in determining whether the defendant's conduct really was immediately necessary. Or if a fact issue is raised regarding the applicability of the provisions that specifically negate a duty to retreat, the prosecutor can argue that the facts do not satisfy the provisions and then argue the failure to retreat as a factor relevant to the defensive issue.

*Id.*  We conclude, therefore, that the report of the death of the duty to retreat is exaggerated.

And as the State points out, Appellant cites no authority for her position. But even if an instruction setting out the circumstances under which a person using force (or deadly force) has no duty to retreat necessarily implies the existence of such a duty, we do not hold it error for the trial court to have included the instruction in its charge.  The court of criminal appeals has held that a trial court will not be held to have erred in its jury charge by tracking the law as set out by the legislature.  *Martinez v. State*, 924 S.W.2d 693, 699 (Tex. Crim. App. 1996); *Riddle v. State*, 888 S.W.2d 1, 8 (Tex. Crim. App. 1994), *cert. denied*, 514 U.S. 1068 (1995).  As stated above, Appellant concedes that the complained-of instruction tracked the law as set out by the legislature.

---

[6]*See* Tex. Penal Code Ann. § 9.31(a) (force is justified "when and to the degree the actor reasonably believes the force is immediately necessary to protect" against unlawful force), § 9.32(a)(2) ("when and to the degree the actor reasonably believes the deadly force is immediately necessary" to protect against deadly force or to prevent the imminent commission of certain crimes).

Moreover, the legislature added the language of which Appellant complains in the very same act in which it deleted the language that she calls the statutory basis for a duty to retreat. *See* Act of Mar. 20, 2007, 80th Leg., R.S., ch. 1, § 3, secs. 9.31, 9.32, 2007 Tex. Gen. Laws 1, 1–2, *supra*. What we take from that is that the legislature intended to eliminate a defendant's burden to affirmatively establish that he or she retreated before employing force (or deadly force) and to stress the set of circumstances under which a defendant could not be held to have such a duty. We refuse to infer, therefore, that the legislature intended to abolish the duty to retreat while at the same time implying its continued existence. Absent any controlling authority to the contrary, Appellant's position is not persuasive and we overrule her second issue. *See Martinez*, 924 S.W.2d at 699; *Riddle*, 888 S.W.2d at 8.

## Jury Argument

In her third and final issue, Appellant contends that the prosecutor improperly struck at her over the shoulders of defense counsel during closing argument when she argued that Tashira told the police on the day of the murder something different than what she told the jury "after four to five visits at the defense attorney's office." The trial court sustained Appellant's objection, instructed the jury to disregard, and denied Appellant's motion for mistrial. The issue, then, is whether the trial court abused its discretion by not granting a mistrial. *See Archie v. State*, 340 S.W.3d 734, 738–40 (Tex. Crim. App. 2011); *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004); *Hunt v. State*, No.

13

02-11-00101-CR, 2012 WL 858613, at *2 (Tex. App.—Fort Worth Mar. 15, 2012, pet. ref'd) (mem. op., not designated for publication).

We review a trial court's ruling on a motion for mistrial for an abuse of discretion. *Hawkins*, 135 S.W.3d at 77; *Hunt*, 2012 WL 858613, at *2. When the refusal to grant a mistrial follows an objection for improper jury argument, we balance three factors to determine whether the trial court abused its discretion: (1) the severity of the misconduct (prejudicial effect), (2) curative measures, and (3) the certainty of conviction absent the misconduct. *Archie*, 340 S.W.3d at 739; *Hawkins*, 135 S.W.3d at 77*; Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999); *Hunt*, 2012 WL 858613, at *2. Only in extreme circumstances, when the prejudice caused by the improper argument is incurable, that is, "so prejudicial that expenditure of further time and expense would be wasteful and futile," will a mistrial be required. *Hawkins*, 135 S.W.3d at 77; *see Archie*, 340 S.W.3d 739 ("Mistrial is . . . appropriate . . . when . . . the objectionable events 'are so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant.'") (citing *Young v. State*, 137 S.W.3d 65, 71 (Tex. Crim. App. 2004)). In most cases, an instruction to disregard will cure the alleged harm. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000), *cert. denied*, 532 U.S. 944 (2001).

In examining the first factor, we consider the severity or prejudicial effect of the misconduct. *See Archie*, 340 S.W.3d at 739; *Hawkins*, 135 S.W.3d at 77.

14

Here is the portion of the State's closing argument that Appellant complains struck at her over her counsel's shoulders:

> And what's the testimony then? He [the deceased] is gathering up his property to leave. Tashira says he opens the door, and the defendant says, her mother, she tells Detective O'Brien immediately after this happens, not a year later, not after four to five visits at the defense attorney's office, she says her mother says, "Go ahead and hit me."

The trial court sustained Appellant's objection. But it may have done so in an abundance of caution because we are not entirely convinced that the comment was improper, let alone severe or all that prejudicial.

Permissible jury argument generally falls into one of four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for law enforcement. *Davis v. State*, 329 S.W.3d 798, 821 (Tex. Crim. App. 2010), *cert. denied*, 132 S. Ct. 128 (2011); *Cannady v. State*, 11 S.W.3d 205, 213 (Tex. Crim. App.), *cert. denied*, 531 U.S. 850 (2000). When a prosecutor makes uninvited and unsubstantiated accusations of improper conduct directed toward a defendant's attorney, in an attempt to prejudice the jury against the defendant, courts refer to this as striking a defendant over the shoulders of his counsel. *Phillips v. State*, 130 S.W.3d 343, 355 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (op. on reh'g), *aff'd at* 193 S.W.3d 904 (Tex. Crim. App. 2006).

Argument that strikes at a defendant over the shoulders of defense counsel is improper. *Davis*, 329 S.W.3d at 821; *Wilson v. State*, 7 S.W.3d 136,

147 (Tex. Crim. App. 1999); *Dinkins v. State*, 894 S.W.2d 330, 357 (Tex. Crim. App.), *cert. denied*, 516 U.S. 832 (1995). This prohibition protects the defendant from improper prosecutorial character attacks on defense counsel. *Davis v. State*, 268 S.W.3d 683, 713 (Tex. App.—Fort Worth 2008, pet. ref'd).

A prosecutor risks improperly striking at a defendant over the shoulders of counsel when the argument refers to defense counsel personally and when the argument explicitly impugns defense counsel's character. *Mosley*, 983 S.W.2d at 259; *Davis*, 268 S.W.3d at 712. For example, a prosecutor impermissibly strikes at a defendant over counsel's shoulders when the prosecutor argues that defense counsel manufactured evidence, suborned perjury, accepted stolen money, or represented criminals. *See Phillips*, 130 S.W.3d at 355; *Washington v. State*, 822 S.W.2d 110, 119 (Tex. App.—Waco 1991), *rev'd on other grounds*, 856 S.W.2d 184 (Tex. Crim. App. 1993); *see also Fuentes v. State*, 664 S.W.2d 333, 335 (Tex. Crim. App. [Panel Op.] 1984) (prosecutor may not accuse defense counsel of bad faith or insincerity or discuss counsel's "usual antics"); *Anderson v. State*, 525 S.W.2d 20, 22 (Tex. Crim. App. 1975) (arguments that criticize defense counsel, including that defense counsel "did not have guts enough" to argue innocence of his client and request for more time to argue because of defense counsel's "frivolous objections" were improper); *Jones v. State*, 151 Tex. Crim. 115, 119, 205 S.W.2d 590, 592 (1947) (prosecutor argued that men had been "cleared of murder by the machinations of" defense counsel's

16

"great" and "shrewd mind" that would "take care of everything and furnish the evidence").

An argument that is directed at the defendant but not personally at defense counsel is not a strike over the shoulders of counsel. *See Davis*, 329 S.W.3d at 823. For an improper jury argument to mandate reversal, it must be extreme, violate a mandatory statute, or inject new facts into the record. *Brandley v. State*, 691 S.W.2d 699, 712–13 (Tex. Crim. App. 1985). The standard of review for a trial court's ruling on an objection asserting improper jury argument is abuse of discretion. *See Lemon v. State*, 298 S.W.3d 705, 707 (Tex. App.—San Antonio 2009, pet. ref'd); *York v. State*, 258 S.W.3d 712, 717 (Tex. App.—Waco 2008, pet. ref'd).

We do not read the complained-of portion of the prosecutor's remarks as an attack on counsel's character or a criticism of his defense of Appellant. *See Mosley*, 983 S.W.2d at 259. Nor did the prosecutor accuse counsel of any wrongdoing or impropriety. *See id.; Fuentes*, 664 S.W.2d at 335; *Phillips*, 130 S.W.3d at 355. Rather, the prosecutor's argument pointed out—as the record amply demonstrated—that Tashira's original statements to police differed from what she testified to at trial. Although it would not be unreasonable to infer that she changed her story after consulting with defense counsel, it does not necessarily follow that she did so at counsel's direction. Nor did the prosecutor argue that counsel directed her to change her story. She merely argued that the story changed between the time Tashira told it to the police on the day of the

17

murder and when she told it to the jury and that in between the two she had visited with the defense. And, again, the record supports that argument.

The cases showing strikes over the shoulders of counsel have been more directly aimed at counsel than this. *See Mosely*, 983 S.W.2d at 259*; Fuentes*, 664 S.W.2d at 335 (prosecutor argued defense counsel acted "in bad faith like usual" and knew purported evidence of police misconduct was "a bunch of garbage"); *Wilson v. State*, 938 S.W.2d 57, 58 (Tex. Crim. App. 1996) (prosecutor argued that "[defense counsel] wishes . . . that you turn a guilty man free . . . because he doesn't have the obligation to see that justice is done"); *overruled on other grounds by Motilla v. State*, 78 S.W.3d 352, 356–57 n.26 (Tex. Crim. App. 2002); *Anderson v. State*, 525 S.W.2d 20, 21–22 (Tex. Crim. App. 1975) (State accused defense attorneys of lying); *Phillips*, 130 S.W.3d at 356–57 (State's arguments in a sexual assault of a child case that the defense— "nailed [the complainant] up on a cross," "nail[ed her] to a cross," and "called her whore"—were targeted at defense counsel's handling of the case and made toward counsel personally).

Nevertheless, largely because the trial court sustained the objection, we will assume that the prosecutor's remark was improper. Skipping for the time being the first factor for determining whether the trial court erred by refusing a mistrial based on improper jury argument (severity or prejudicial effect), under the second factor, we review the character of the measures adopted to cure the misconduct. *See Archie*, 340 S.W.3d at 739; *Hawkins*, 135 S.W.3d at 77. The

18

law generally presumes that instructions to disregard and other cautionary instructions will be duly obeyed by the jury. *Archie*, 340 S.W.3d at 741; *Gardner v. State*, 730 S.W.2d 675, 696 (Tex. Crim. App.), *cert. denied*, 484 U.S. 905 (1987). And generally, a trial court cures any error from an improper jury argument when it instructs the jury to disregard the comment. *See Wilkerson v. State*, 881 S.W.2d 321, 327 (Tex. Crim. App.); *cert. denied*, 513 U.S. 1060 (1994); *Phillips*, 130 S.W.3d at 355. In this case, the trial court sustained the objection to the prosecutor's argument, immediately ordered the jury to disregard it, and the prosecutor did not revisit this line of argument. The second factor, therefore, weighs in favor of the trial court's ruling.

Returning to the first factor, we conclude that the remark was not severe or prejudicial. As we have said, it appears to us that the gist of the argument was directed at Tashira and her having changed her story and that argument was supported by the record. During the State's examination of Tashira, the prosecutor pointed out several instances in which Tashira's statements to the police differed from her testimony at trial. The prosecutor's remark reminding the jury of that fact did not inject anything into the trial of which the jury was previously unaware. Even assuming that the prosecutor's remark was improper, we hold that it was not severe or unduly prejudicial. The first factor weighs against Appellant's position.

Lastly, under the third factor, the reviewing court looks to the certainty of conviction absent the misconduct. *See Archie*, 340 S.W.3d at 739; *Hawkins*, 135

19

S.W.3d at 77. We find the evidence to support Appellant's conviction to be fairly compelling. In our view, the evidence supporting the conviction was strong, and the jury would almost surely have convicted Appellant regardless of the prosecutor's comment during her closing argument.

The magnitude of the prejudice caused by the prosecutor's remark was not so great that a jury would necessarily have discounted the trial court's instruction to disregard it. It seems unlikely that the jury would have ignored the trial court's timely instruction and convicted Appellant, not on the compelling evidence introduced against her, but because the prosecutor implied that Appellant's daughter changed her testimony after consulting with defense counsel. Under these circumstances, assuming without deciding that the prosecutor's comments were improper, we hold that the trial court did not abuse its discretion by denying Appellant's request for a mistrial. *See Archie*, 340 S.W.3d at 742; *Wilkerson*, 881 S.W.2d at 327. Accordingly, we overrule Appellant's third issue.

## Conclusion

Having overruled all of Appellant's issues, we affirm the judgment of the trial court.

LEE GABRIEL<br>
JUSTICE

PANEL: LIVINGSTON, C.J.; MCCOY and GABRIEL, JJ.

PUBLISH

DELIVERED: February 28, 2013