**Affirmed and Memorandum Opinion filed February 10, 2015.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-14-00140-CR

---

## CASIMIRO BUSTOS SANDOVAL, Appellant

### V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the 248th District Court
Harris County, Texas
Trial Court Cause No. 1353837**

---

## M E M O R A N D U M   O P I N I O N

Appellant Casimiro Bustos Sandoval appeals his conviction for murder. *See* Tex. Penal Code Ann. § 19.02 (West, Westlaw through 2013 3d C.S.). In a single issue he argues the trial court erred in overruling the timely defense objection to improper argument during the guilt phase of trial. Finding that the prosecutor's argument was supported by the evidence, we affirm.

## BACKGROUND

On June 22, 2012, Cesaereo Herrera was shot and killed outside the Mi Familia grocery store in Harris County. Monica Alvarez, a store employee, heard what she first thought were fireworks, but called police when she saw people on the store surveillance cameras running. Herrera was dead when police arrived at the scene. The shooting took place near volleyball courts adjacent to the grocery store.

Elida Bronfield testified that she lived in an apartment across the street from the grocery store, and she often saw young men playing in the volleyball court next to the store. At about 7:30 p.m. on June 22, Bronfield and her daughter were on her balcony looking toward the store. Bronfield saw approximately 80 people near the volleyball court, and observed appellant pull a gun out of the pocket of his shorts. Bronfield testified that appellant pointed the weapon at the ground and fired it. Appellant then pointed the gun at the victim and shot him. After he shot the victim, appellant got in a truck and left.

Jaime Duarte lived near the grocery store and visited there many times. On June 22, Duarte arrived at the location between 7:00 and 8:00 p.m., and there were many people already there including appellant. When Duarte first saw appellant he was "with some friends of his" and, as they drank, "they ended up getting upset at each other." He heard appellant say to the victim, "Nobody messes with my friend." Appellant took out a gun and shot it at the ground. The gun jammed after the first shot, but appellant eventually shot the victim.

Deputy Mario Quintanilla investigated the shooting. When Quintanilla reviewed the surveillance footage from a camera located outside the grocery store he saw that at the time of the shooting there were several witnesses in the area. By the time Quintanilla arrived on the scene those witnesses had left the area.

Quintanilla testified that it was difficult to find witnesses in this case because most of the people in the neighborhood are afraid to speak to the police due to their undocumented status.

Through canvassing the neighborhood Quintanilla learned that Bronfield and her daughter had witnessed the shooting from their apartment across the street from the grocery store. Quintanilla also learned that J. T., a ten-year-old boy, had been at the volleyball courts standing next to appellant's two sons when the shooting occurred. Quintanilla met with J. T. and his mother, learned that they knew the suspect in the shooting and his sons, but that they were afraid to come forward.

After obtaining positive identifications through a photo spread from Bronfield, her daughter, and Duarte, Quintanilla went back to J. T.'s house and showed him the same photo spread.

Quintanilla obtained an arrest warrant, but was unable to locate appellant. Quintanilla learned that appellant may have fled to Mexico, but was receiving mixed information. Seven to eight months later appellant was arrested.

A jury convicted appellant of murder and sentenced him to confinement for 50 years in the Institutional Division of the Texas Department of Criminal Justice.

STATE'S CLOSING ARGUMENT

In his sole issue on appeal appellant argues the trial court erred in overruling his objection to the following statement made by the prosecutor during his closing argument:

> I want to talk about Jaime Duarte for a moment. Both witnesses I had to beg. I did this on the stand. I had to beg Elida to come testify because she was so afraid. Quintanilla talked about the boy we tried to get, [J. T.]. I and Quintanilla went to his house begging his family to

3

allow him to testify and his family will not allow him to testify.

Appellant objected, stating, "Objection, arguing facts not in evidence[.]" The trial court overruled appellant's objection.

We review a trial court's ruling on objections to improper closing arguments for an abuse of discretion. *Whitney v. State*, 396 S.W.3d 696, 703–05 (Tex. App.—Fort Worth 2013, pet. ref'd). We analyze the closing argument in light of the entire record, and not upon the argument's isolated occurrence. *DeLarue v. State*, 102 S.W.3d 388, 405 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd).

Proper closing arguments (1) summarize the evidence; (2) make reasonable deductions from the evidence; (3) respond to arguments of opposing counsel; or (4) plead for law enforcement. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). Appellant argues that the prosecutor's argument was improper because it argued facts not in evidence, and implied the State had more information than the jury could hear. We disagree.

On direct examination, Quintanilla testified as follows:

Q. When you met with [J. T.], did you speak to him about the shooting?

A. Yes, I did.

Q. Did he give you an account of the shooting?

A. Yes, he did.

Q. Was his account consistent with both Penaloza, Elida Bronfield and Jonathan Jaime Duarte?

A. Yes, it was.

Q. When you met with this boy, did you talk to his mother as well?

A. Yes, I did.

Q. Now, I want you to explain to the jury how his mom felt about him being involved in this investigation.

4

A. Well, it's like she was very frightened. They were scared of possible retaliation. And she let me know that they knew who the suspect was and his boys, that they have knowledge of who they were and they were just scared to come forward. And she did not want her 10-year-old boy to be involved.

\* \* \* \* \*

Q. Now, when I called you prior to trial, did I have you come out with me to meet a witness?

A. Yes, you did.

Q. Was that [J. T.]?

A. Yes, it was.

Q. Tell the jury how that meeting went.

A. The family was very scared, which I don't blame them. It's a young kid. Put him in a position to face — you know, face a possible shooter, murderer, and put him on the stand.

Q. Through the court system, is there any way that I can force a 13-year-old to take the stand?

A. I believe you can do an attachment.

Q. Would it surprise you to find out you can only attach adults, not kids?

A. Oh, okay. That's out the window.

Q. After that conversation, are his family going to allow him to testify in this case?

A. No, they're not.

Bronfield also testified that she was initially afraid to testify:

Q. [by the prosecutor] I spoke to you at your house, right?

A. Yes, at my house.

Q. You were very afraid to come testify today, weren't you?

A. Yes, correct.

Q. I had to do some begging to get you to come here?

A. Yes, it's true.

5

Q. Can you tell the jury why you were so afraid to come testify?

MR. MADRID [defense counsel]: Objection to relevance.

THE COURT: Relevance?

MR. WAKEFIELD: She's already explained that she's fearful to testifying and why she's fearful and she's weeping, just an explanation on those things.

THE COURT: It's overruled.

Q. (BY MR. WAKEFIELD) You can tell them. Why were you so afraid coming here to testify?

A. Because a person like him that took away this young man's life does not have a good heart, I'd say.

Q. That made you afraid?

A. Yes.

The prosecutor's argument was not improper because it was a reasonable deduction from the evidence. Appellant argues the prosecutor "unfairly bolstered his case by referring to facts not in evidence when he told the jury he went to the home of a child witness and begged his family to let him testify."

The prosecutor's comment, however, did not go beyond the evidence presented at trial. Quintanilla testified that J. T. could identify the individual who shot the victim, and that when he showed the photo array to J. T., Quintanilla did not change his opinion of who the suspect was. The victim's brother, Servando Herrera, testified that J. T. was the first person to inform him of his brother's death. Servando Herrera also testified that J. T.'s parents did not want him to testify because he is a minor. Bronfield also testified that she was initially afraid to testify and the prosecutor spoke to her and asked her to testify. The evidence was before the jury and the prosecutor's argument is permissible as a summary of the evidence.

Viewing the closing argument in the context of all of the evidence, we

cannot say that the prosecutor exceeded the bounds of permissible jury argument. We overrule appellant's sole issue.

The trial court's judgment is affirmed.


/s/    Tracy Christopher
Justice


Panel consists of Justices Christopher, Donovan, and Wise.
Do Not Publish — Tex. R. App. P. 47.2(b).