ACCEPTED
06-14-00140-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
4/30/2015 9:17:47 AM
DEBBIE AUTREY
CLERK

# NO. 06-14-00190-CR
# IN THE
# SIXTH COURT OF APPEALS OF TEXAS
# TEXARKANA, TEXAS

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
4/30/2015 9:17:47 AM
DEBBIE AUTREY
Clerk

## TONYA ANN RODRIGUEZ,
## APPELLANT
## VS
## STATE OF TEXAS,
## APPELLEE

## On Appeal From the 354th District Court

## Of Hunt County, Texas

## Trial Court Cause No. 29,230

## BRIEF FOR THE APPELLANT

**FRANK LONG**
**614 Oak Avenue**
**Sulphur Springs, Texas 75482**
**Tel: (903) 885-7800**
**Fax: (903) 885-7133**

Oral Argument Not Requested

# Identity of Parties and Counsel

**1. Trial Judge**: The Honorable Richard Beacom presided over the trial of this case, Presiding Judge of the 354th Judicial District Court of Hunt County, 2507 Lee St. Greenville, TX 75401.

**2. Appellant:** Tonya Ann Rodriguez, Hunt County Detention Center 2801 Stuart St., Greenville, TX 75401

**3. Counsel for Appellant:**

**a.** The Appellant was represented at the Trial Court by Royal Mullins, 2608 Stonewall St., Greenville, Texas 75401

**b.** The Appellant is represented on appeal by Frank Long, 614 Oak Ave., Sulphur Springs, TX 75482.

**4. Counsel for the State of Texas:**

**a.** The State of Texas was represented by Noble Dan Walker, Jr., Hunt County District Attorney, at the trial court level.

**b.** The State is represented on appeal by and through Noble Dan Walker, Jr., District Attorney, 2507 Lee St., Greenville, TX 75401.

# TABLE OF CONTENTS

| | |
|---|---|
| Identity of Parties and Counsel | 2 |
| TABLE OF AUTHORITIES | 4 |
| STATEMENT OF THE CASE | 5 |
| STATEMENT OF FACTS | 6 |
| ARGUMENT | 12 |
| APPELLANT'S SINGLE ISSUE | 12 |
| Arguments And Authorities | 13 |
| PRAYER | 17 |
| CERTIFICATE OF SERVICE | 17 |
| CERTIFICATE OF COMPLIANCE | 18 |

# TABLE OF AUTHORITIES

**Cases**

Cardenas v. State, 325 S.W.3d 179 (Tex. Crim. App., 2010)    14

Gaddis v. State, 753 S.W.2d 396,398 (Tex.Crim.App.1988)    14

Jackson v. State, 17 S.W.3d 664, 673 (Tex.Crim.App.2000)    13

King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)    14

Martinez v. State, 17 S.W.3d 677, 692-93 (Tex. Crim. App. 2000)    15

McCarty v. State, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008)    14

Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g)    14

Solomon v. State, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001)    14

Threadgill v. State, 146 S.W.3d 654, 666 (Tex. Crim. App. 2004);    14

Todd v. State, 598 S.W.2d 286, 296-97 (Tex.Crim.App. 1980)    15

Wesbrook v. State, 29 S.W.3d 103, 115 (Tex.Crim.App. 2000)    15

Whitney v. State, 396 S.W.3d 696, 703-04 (Tex. App.--Fort Worth 2013, pet. ref'd)    14

**Rules**

TEX. R. APP. P. 44.2(b);    14

**STATEMENT REGARDING ORAL ARGUMENT**

Appellant does not request oral argument as the decisional process of this Court would not be significantly aided by oral argument since the facts and legal arguments are adequately presented in the briefs submitted to this Court.

## STATEMENT OF THE CASE

Appellant was charged by indictment with the 1st degree felony offense of Injury To A Child Causing Serious Bodily Injury with an alleged mental state of "intentional" in Cause No. 29,230 in the 354th District Court of Hunt County, Texas. Defendant entered a plea of Guilty to an amended indictment containing the lesser included 2nd degree felony charge of Injury To A Child Causing Serious Bodily Injury with an alleged mental state of "reckless" and a trial on punishment was heard from July 13, 2014 to July 16, 2014. The jury returned a verdict of 16 years incarceration in the Texas Department of Criminal Justice Institutional Division and the Court entered a judgment consistent with the punishment verdict and the 1st degree count was dismissed. Appellant now appeals the sentence of 16 years to the 2nd degree felony offense of Injury To A Child Causing Serious Bodily Injury.

Did the Court err by allowing the State, over a proper objection, to argue for the jury to violate the law regarding proper consideration of the full range of punishment.

## NO. 06-14-00190-CR
## IN THE
## SIXTH COURT OF APPEALS OF TEXAS
## TEXARKANA, TEXAS

---

## TONYA ANN RODRIGUEZ

## VS

## STATE OF TEXAS

---

## Brief For The Appellant

---

### STATEMENT OF FACTS

Appellant was indicted for the 1st degree felony of Injury To A Child Causing Serious Bodily Injury on August 23, 2013. After arraignment and a

pretrial hearing, Appellant's trial counsel and the assistant district attorney announced a plea agreement on March 18, 2014 consisting of Appellant entering a plea of guilty to a lesser charge of reckless intent Injury To A Child Causing Serious Bodily Injury, a second degree felony. (RR V at 4-5) The State amended the indictment acting a Count II allegation of reckless and Appellant entered her plea on April 15, 2014. (RR VI at 7-8) A jury was selected on July 14, 2014 and a trial to the jury on punishment followed. After trial, the jury returned a verdict of 16 years and a judgment consistent with the verdict was entered on July 16, 2014, (CR at 70). Appellant does not contest the sufficiency of the evidence. A detailed recitation of the facts is therefore unnecessary. A summary of the testimony is below.

After a jury was empaneled and sworn, the State called Shannon Tadlock, the mother of the injured child, (RR X at 16). Ms Tadlock testified about how she discovered her child suffered from a leg fracture. Ms Tadlock had dropped the child, A.H. at the residence of Appellant where Appellant operated a small daycare center. Ms Tadlock testified that her child A.H. was abnormally fussy that Tuesday because of constipation issues and the matter was discussed with Appellant, (RR X at 21). Ms Tadlock testified that she received a phone call from Appellant that Tuesday afternoon and there was some discussion of something perhaps

wrong with the child's leg, but it was agreed that Ms Tadlock would pick up the child at the usual time after 5:00P.M. Ms Tadlock testified that she and the child's father, Micah, picked up A.H.and noticed something wrong and took A.H.to the emergency room, (RR X at 25).

Ms Tadlock testified that A.H.was examined including having xrays taken. Without objection, Ms Tadlock testifies that she was told by the medical personnel that A.H.suffered a spiral fracture that could was non-accidental, (RR X at 25). Ms Tadlock testifies about riding in the ambulance with A.H.from the hospital in Greenville to Children's Medical Center in Dallas (RR X at 28). And Ms Tadlock repeats with no objection that "the doctors told me, again, it was a non-accidental break, that someone had to have forcibly done this to her, (RR X at 30). With no objection, the following exchange occurred (RR X at 31):

> Q:     And did they ever get a chance to go over with you, like, what they -- the type of force or what type of injury this could have been? Did they explain that to you?
>
> A:     They said they would have had to -- someone would have had to have literally twisted her leg so hard that it would snap. They told me that her, especially babies' bones, are very bendable so even -- that much force is still even really hard to

break them. They said it had -- it couldn't have been done by accident.

Ms Tadlock then testifies to the events of the next week after her child is placed with her in-laws pending a CPS investigation. She testifies upon questioning as to the hearsay regarding the CPS investigation, "Ms Haines told me that they had ruled us out as hurting her and that they had ruled it out pretty quickly and that we were allowed to take her home and that they would begin looking at Ms. Rodriguez with, really, there only being two people who saw her constantly, me and Ms. Rodriguez, (RR X at 35).

The State called Amanda Haines, the Child Protective Services investigator (RR X at 44). Ms Haines described how the investigation regarding the injury to A.H.began and how Appellant became the prime target of the investigation by Child Protective Services and law enforcement (RR X 44-54). Ms Haines describes a lengthy interrogation of Appellant conducted by Detective Fuller of the Greenville Police Department. She further describes, with no objection as to the absence of any scientific basis or predicate, the results of an oral swab drug test administered to Appellant (RR X at 60-65). Ms Haines testifies at length about the type of test administered and the general dangers of methamphetamine use regarding child care, (RR X 67). Ms Haines also

discusses her impressions of Appellant from Detective Fuller's interrorogation, including Ms Haines's speculation that Appellant's "jittery" behavior during the interview could be from methamphetamine use (RR X at 72). On cross examination the following exchange occurs (RR X at 76):

Q:     At the time did the doctor tell you exactly how that injury -- whether it be twisting or snapping or how that type of injury would have to be --what type of force or the actions that would take place?

A:     They said it had to be extreme force and that one would have known that they had broken the leg at that time.

The next witness called by the State is Dr. Kristen Reeder, a pediatrician from Children's Medical in Dallas (RR X at 79). Dr. Reeder testified that she examined A.H.and determined that she had a spiral fracture on her right femur (RR X at 85). As to the force required to cause the spiral fracture, Dr. Reeder testifies, "There aren't any studies as of now that actually have a measurement for the force needed; but just through clinical practice, through real life practice, I personally have changed thousands of diapers and have never broken a baby's leg"(RR X at 92). Dr. Reeder answers in the affirmative when asked by the State, "[I]s the type of force that's required to break a bone like this a sufficient amount of force that the caregiver would know that they're going to at least cause pain in

the child, if not know they were about to break the child's leg?" (RR X at 92). Dr. Reeder does not offer any opinion with regard to the time the bone fracture could have happened. After Dr. Reeder, the State rested as to the punishment hearing.

Appellant called the following witnesses: Juanita Rosales, Appellant's aunt (RR X at 106-122); John Villareal, Appellant's uncle (RR X at 122-134); another aunt, Mary Sue Sartin (RR X at 134-136); Donna Jean Lester, an acquaintance of Appellant's who knew her because Appellant cared for her grandchild (RR X at 137-150);and Appelleant called a niece of Appellant's Ashley Johnson (RR X at 150-158). These witnesses all provided testimony that Appellant kept a very clean home and that they all trusted her to care for children.

Appellant also testified (RR X 159-233). Appellant admits using a small amount of a substance she believed to be methamphetamine on the Saturday prior to the discovery of the child's injury (RR X at 220). Appellant admitted that the injury must have happened while in Ms Rodriguez's care, but consistently denied knowing exactly how the injury occurred (RR X at 197). Ms Rodriguez also testified that she had never been convicted of a felony or misdemanor and was eligible to receieve probation from the jury

(RR X at 211). On cross examination, the prosecutor asked Appellant about the status of Appellant's disabled daughter and whether or not Adult Protective Services ever investigated her (RR X at 228). The prosecutor also asked, "The members of the Greenville Police Department also made contact with you; is that correct?" (RR X at 228). Appellant replied, "Uh-huh" and there was no objection to the line of questioning. Appellant was also asked about the status of her other daughter's boyfriend as a registered sex offender with no objection (RR X at 230).

In rebuttal, the State offered the testimony of Detective Fuller and questioned her about the interviews of Appellant and whether or not Detective Fuller believed Appellant was truthful (RR X at 237). The State also offered without objection the testimony of Lacey Dejarneatt who testified about a specific incident involving going to Appellant's home and finding her daughter unattended (RR XI at 6-8).

# ARGUMENT

## APPELLANT'S SINGLE ISSUE

**The Court Erred by Allowing the State, Over a Proper Objection, To Argue For The Jury To Violate The Law Regarding Proper Consideration Of The Full Range of Punishment**

### Fact Statement

Appellant incorporates fully all of the facts set out in the Statement of Facts, above, and adds the additional facts from volume eleven of the Reporter's Record relevant to this issue.

The jury received the accepted instruction regarding extraneous offenses as follows:

> The State has introduced evidence of extraneous crimes or bad acts other than the one charged in the indictment in this case. This evidence was admitted only for the purpose of assisting you, it it does, in determining the proper punishment for the offense for which you have found the defendant guilty. You cannot consider the testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other acts, if any were committed (RR XI at 15).

The jury was also instructed on the full range of punishment for injury to a child by a reckless act causing serious bodily injury as a second degree felony with the possibility of probation (RR XI at 12-13).

The prosecutor elected to split his argument in two parts. During the first part of the prosecutor's argument to the jury the following exchange occurred (RR XI at 20-21):

> [By Assistant District Attorney Lilley]: So I tell you this: Start your deliberations at 11 years and go up from there becaue that's a sign to this defendant and our community that we never even consider--
> MR. MULLINS: Objection, Your Honor. The State is -- the law says the jury can consider the full range and he's giving instructions to start at a certain place and that's improper argument.
> MR. LILLEY: They were qualified on the full range, Your Honor. They don't have to consider it if --
> MR. MULLINS: It's improper -- it's improper for a prosecutor to start telling the jury how or where they should start deliberating or how to deliberate. It's improper argument.
> THE COURT: Well, let's -- rather than instruction of where to start, I think you can argue where the State would like to see the punishment range go from.
> MR. LILLEY: Okay. So where State [sic] believes that the range that should be honestly considered, based on the facts that you heard, is 11 years and up because that sends a message that our community never even considered probation in this case.
> The State further urged the jury to consider the alleged lack of

truthfulness of the Appellant as well as the alleged drug use of Appellant.

Trial Counsel for Appellant argued for a probated sentence.

The jury returned a sentence of 16 years confinement (RR XI at 41).

## Arguments And Authorities

The Texas Court of Criminal Appeals recognizs four areas of proper jury argument: (1) summation of the evidence presented at trial; (2) reasonable dedution drawn from that evidence; (3) answer to the opposing counsel's argument; or (4) a plea for law enforcement. Davis v. State, 340 S.W.3d 717,728 (Tex.Crim.App.2010); Jackson v. State, 17 S.W.3d 664, 673 (Tex.Crim.App.2000). In examining challenges to a jury argument, the remark is to be considered in the context in which it appears. Gaddis v. State, 753 S.W.2d 396,398 (Tex.Crim.App.1988). At punishment, a jury is to consider the full range of punishment. Cardenas v. State, 325 S.W.3d 179 (Tex. Crim. App., 2010).

The standard of review for a trial court's ruling on an objection asserting improper jury argument is abuse of discretion. Whitney v. State, 396 S.W.3d 696, 703-04 (Tex. App.--Fort Worth 2013, pet. ref'd). An abuse of discretion involves a decision that was so clearly wrong that it lies outside the zone within which reasonable persons might disagree. See McCarty v. State, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008).

Improper jury argument is reviewed under a nonconstitutional harm analysis under rule 44.2(b) of the rules of appellate procedure, and must be disregarded unless it affected appellant's substantial rights. TEX. R. APP. P. 44.2(b); see Threadgill v. State, 146 S.W.3d 654, 666 (Tex. Crim. App.

2004); Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." Solomon v. State, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). Three factors are to be considered in determining whether or not an appellant's subsantial rights were affected: 1) the severity of the misconduct (i.e., the prejudicial effect of the prosecutor's remarks); (2) curative measures; and (3) the certainty of the punishment assessed absent the misconduct. See Martinez v. State, 17 S.W.3d 677, 692-93 (Tex. Crim. App. 2000). Reversible error occurs when, in light of the record as a whole, the argument is extreme or minifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceeding. Wesbrook v. State, 29 S.W.3d 103, 115 (Tex.Crim.App. 2000), citing Todd v. State, 598 S.W.2d 286, 296-97 (Tex.Crim.App. 1980).

During final argument, the prosecutor plainly urged the jury to disregard the full range of punishment and only "honestly consider" a sentence over eleven years (RR XI at 20-21). The statement was properly

objected to but the error was compounded by the trial court's remarks in overruling the objection by stating, "...I think you can argue where the State would like to see the punishment range go from" (RR XI at 21). Clearly the jury would have understood this exchange as being given the judge's approval, and even instruction, to disregard any sentence in the punishment range less than eleven years. Taking into account that the consideration of the full punishment range is the jury's prime duty under their oath, the erroneous nature of the prosecutor's argument and the court's ruling is quite obvious. Examining the argument by the prosecutor in the context of the comment by the trial judge, the substantial and injurious effect or influence of both the argument and the ruling is clearly wrong and an abuse of discretion.

The prosecutor's remark is quite severe and prejudicial in that it actually urges the jury to disregard the law and their oath to render a true and correct verdict. Specifically, the statement, "So where State [sic] believes that the range that should be honestly considered, based on the facts that you heard, is 11 years and up because that sends a message that our community never even considered probation in this case" (RR XI at 21). Quite possibly, the prosecutor merely mistated what would be a perfectly proper argument in asking the jury to give a sentence over eleven

years. But the mistatement, namely the words "honestly considered," make the argument wholly improper. The law is well established that the jury must consider the full range of punishment.

Considering that the jury assessed sixteen years incarceration to a Defendant who was clearly eligible for probation highlights the harm in this case. Taking into account the other obvious errors in the record, Appellant has demonstrated harm. In particular, the jury heard, without objection, mere speculation of Defendant's drug use. There was no scientific evidence or predicate made to prove any details of Defendant's alleged drug use. The jury heard with no objection, blatant opinions concerning the character of the accused. The jury heard hearsay without objection from multiple witnesses called by the State regarding the nature of the child's injury. The jury also heard witnesses imply that Defendant had other criminal violations involving Adult Protective Services. Taking into account the record as a whole, the prosecutor's argument to disregard their oath and not honestly consider the full punishment range shows clear harm requiring reversal.

Having proven harm to the degree mandated in cases of non-constitutional error, Appellant requests this Court reverse the Trial Court's

Judgment and remand the case for further proceedings pursuant to

Tex.R.App.Pro. 43.2(d).

## PRAYER

Appellant prays that she be granted the relief requested under the

issue set forth herein.

Respectfully submitted

_____
Frank Long

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct electronic copy of the foregoing

Appellant's Brief was mailed to Rodriguez, and a true and correct copy

compliant with the E-Filing rules adopted by the Texas Supreme Court,

effective 1-1-2014, has been filed with the Sixth Court of Appeals and has

been served on all parties in interest.

_____
Frank Long

# CERTIFICATE OF COMPLIANCE

Relying on the word count function in the word processing software used to produce this document, I certify that the number of words in this brief is 3,480 words.

Frank Long