**854-15**

(NO. 02-13-00556-CR)

IN THE TEXAS COURT OF CRIMINAL
APPEALS, AUSTIN

ORIGINAL

RECEIVED IN
COURT OF CRIMINAL APPEALS

OCT 08 2015

Abel Acosta, Clerk

ARTIS LEON POLK, JR.
Appellant,

v.

THE STATE OF TEXAS
Appellee,

On appeal from the 432nd Judicial District Co. of Tarrant County,
Texas, Trial Court Case no. 1305834D

PETITION FOR DISCRETIONARY REVIEW OF ARTIS LEON POLK

ORAL ARGUMENT REQUESTED

FILED IN
COURT OF CRIMINAL APPEALS

OCT 08 2015

Abel Acosta, Clerk

Artis leon Polk Jr.
MCConnell Unit
3001 S. Emily Dr.
Beeville, Tx. 78102

# TABLE OF CONTENTS

Identity of the Parties..............................A.

Table of Contents..................................B.

Index of Authorities...............................C.

Statement Regarding Oral Argument. . . . . . . . .D.

Statement of the Case . . . . . . . . . . . . . . ..E.

Statement of Procedural History . . . . . . . . ..F.

Grounds and Questions for Review. . . . . . . . ..G.

Question for Review #1                                1

  Did the court of appeals misconstrue the Court
  of Criminal Appeals reasoning and decision
  concerning 'what constitutes agrression' 'at the time of
  the killings', and did that misunderstanding
  conflict with established law and rules set out
  by the CCA?

Question for Review #2                                6

  Did the court of appeals abuse its discretion by
  upholding the trial court's ruling by not allowing
  a very important witness to the defense to answer
  questions, which the state objected would eithe not
  have been hearsay or would have been an exception
  to the rule against hearsay?

Question for Review #3                                9

  Did the court of appeals improperly decide that
  appellant did not preserve his objection to the
  state's use of his prior agg. robb. during its
  case in chief after he stipulated?

Question for Review #4                                12

  Did the court of appeals decide the issue of
  sudden passion in an uninformed way toward the
  appellant?

Question for Review #5                                13

  Was the court of appeals decision claiming appellant
  waived his complaints for not continuing to object
  against appellant's right to a fair trial?

Prayer  &   Appendix

# Index of Authorities

STATE                                                          PG.

Cockrell v. St.   933Sw2d 73,89(Tex.CrimApp.1996)      13
Fielder v. St.   848 SW2d 85 (Tex.CrimApp.1992)        13
Gipson v. St.   383 SW3d 152 (Tex. Crim.App.2012)      14
James v. St.  335 SW3d 719 (Tex.Crim.App.2012)          5
Tamez v. St. 11 SW3d 198,202 (Tex.CrimApp2000)          9
Torres v. St. 117 SW3d 891 (Tex.Crim.App.2003)         1,2,3,4,5
Walker v. St. 644 SW2d 891 (Tex.Crim.App.1984)         14


Federal

Thompkins v. Cyr 202 F.3d 770,779n.3 (5thCir.2000)      8
Old Chief v. uS 519,172,174(1997)                      10


Texas Code of Criminal Procedure

TCCP Art. 38.36(a)                                      1


Texas Rules of Evidence

33.1(a)(1)                                             11
44.2(b)                                                 7
61.1                                                    5
404(a)(2)                                               9
801                                                     8
803(3)                                                  8

Identity of parties and Counsel

Appellant, Artis leon Polk jr.


Appellee, State of Texas

Joe Shannon, Tarrant CT. D.A.

Judge, Hon. Rueben Gonzalez,jr.


Statement Regarding Oral Argument

Oral argument should be granted becasue the appellant feels it is pertinent that this court understands that the Court of appeals has simply disregarded this courts rulings.


Statement of the Case

This case is an appeal for a murder and an unlawful possession of a firearm convictions, which stem from a domestic situation whereas the appellant was the boyfriend of Sharrell Wright, and resided with her. Wright shared custody of her children with the decedents in the case, Charles knighten, who was the first aggressor, in that he came to the home of the Appellant with the intent to do harm, either to the appellant or Wright, whom he had already, in the pas, assaulted. Records of his criminality were never introduced. The appellant, with knowledge of the decedents history of violence toward the mother of his children, initially tried physically restaining the decedent from his family. The decedent then brandished a weapon, resulting in the appellant retretrieving his own in the defense of his home and especially his family.

## STATEMENT OF PROCEDURAL HISTORY

The Appellant was found guilty of unlawful possession of a firearm and for murder, 20yrs for firearm and 99yrs for murder. Appellant filed a timely notice of appeal on November 8,2013.

The Court of Appeals, 2nd District of Texas, Fort Worth affirmed the convictions on April 23, 2015 thru its memorandum opinion. The appellant properly filed a Motion for Rehearing with an extension to May 21, 2015.

Appellant received an ORDER from the Court of Appeals undated, however, it denied the motion for rehearing.

QUESTION FOR REVIEW #1

Did the court of appeals misconstrue the Court of Criminal Appeals reasoning and decision concerning 'what constitutes aggression' 'at the time of the killings', and did that misunderstanding conflict with established law and rules set out by the Court of Criminal Appeals?

First of all, it is bovious that this issue was preserved being that there were no challenges from the state or the Court of appeal. now, it is firmly established that the Texas Code of Criminal Procedure, art. 38.36(a) and the Texas Rules of Evidence 404(a)(2) permits a defendant the right to offer testimony as to all relevant facts and evidence of a pertinent 'trait of character' of the victim.

Specifically, under Rule 404(a)(2), 'evidence of a victim's character for violence remains admissable to show the victim was the first aggressor.' Mozon v. St. 991SW2d 841, 845-46(Tex. Crim. App. 1999) Here lies the premise of the appellant's claim of error on the part of the court of appeals for citing well-known case-law but using only quotes from the case to support its decision, which, as it turns out, was in conflict withethe decision of the Court of Criminal Appeals', the authors of the deciding opinion of the case.

The appellant pleads with this court to seriously consider its decisions and reasonings wisely put forth in Torress v. St., 117 SW 3d 891(Tex. Crim. App. 2003). Although there were multiple decisions in Torres, three from the court of Appeals and two from this court, The CCA, it was precedent that was established in Torres 117 SW 3d 891.

This precedent, which twice reversed the opinions of the court

1.

of appeals, the appellant asserts it is needed to settle the exact same issue this court resolved in Torres.

To simplify and clarify the appellant's argument, the appellant will point this honorable court to pages 12, 13, and 14 of the court of appeals' Memorandum Opinion.

Step by Step, the appellant will show that the court of appeals quoted authority, cited sound reasoning, but at the end, it diverted from the very authority and reasoning it cited just as it did in the case it now claims it based its decision on, Torres.

On page 12 it cites article 38.36(a) of the C.C.P and Rule 404(a)(3) of the Tex. Rule of Evi.. It even gives an explanation of this court concerning the matter:

Pg.12- "if offered to show the reasonableness of the defendant's claim fo apprehension of danger, it must be shown that the acts of violence were know to the defendant at the time of the homicide;if offered to show that the deceased was in fact the first aggressor, the witness must know, but the defendant need not have known of the violent acts at the time of the homicide. Beecham v. St. 580 SW2d 588(TexCrim1979)

*Evidence of a victim's character for violence remains admissable to show the victim was the first aggressor. A victim's extraneous acts of violence also remain admissable to show the defendant's state of mind. Mozon 991SW2d 841

The appellant, at this point, will bring to the court's attention to the next two cites and quotes, which would plainly show where the court of appeals mindset swayed.

- *the prior acts of violence by the decease must be relevant to the ultimate confrontation between the defendant and the deceased."
- "For Diane's testimony to be admissable 'at the time it was offered,' there must have been evidence of an act of aggression by the deceased that tends to raise the issue of self-defense."
  -Torres 117 SW 3d 891-

It is well-known that the reason for five different decisions in Torres was due to these quotes and an issue of 'timing.' Just

2.

like in Torres, the appellant here was a boyfriend of Sharrel Wright, the ex-girlfriend of the decedent, Charles Knighten. The decedent had on several occassions physically assaulted Wright.

At the time in question, Knighten, who became angry that his ex-girlfriend and mother to his children had the appellant at the home in the presence of his children. It was he who drove to the home of the appellant, two cities over, exited his vehicle and when he was restrained by his mother and friends from being able to physically assault the appellant, he then brandished a weapon, namely a pistol.

The appellant, in fear of his life and that of his girlfriend Wright and all others inside their home, hurriedly went to retrieve the only wepaon he had access to to protect his family, which is definately allowable by any law in Texas.

To be specific, the appellant directs this honorable court's attention to page 13, the last paragraph of the court of appeals memorandum opinion, and the first 5 lines of pg. 14:

> "Second, we cannot hold that the evidence was admissable to show Knighten's character for violence because at the time of the trial court's rulings, there was no evidence of any aggression by Knighten 'at the time of the killing'...which could give rise to appellant's claim of self-defense. At the time of the rulings, witnesses had testified that Knighten had acted aggressively before arriving at the apartment and upon arriving but no witness had testified that he was still outwardly aggressive at the moment of the killing."

After this discourse, the court of appeals goes on to explain away the fact that Knighten, the decedent, had already acted out and had not left the vicinity of the apartment while the appellant went to get his weapon in defense of his family. The court's lone reasoning for not holding knighten's past acts of violence admissable

3.

was that testimony at trial from Porter Lewis and John Reed (RR005,205) and (RR004,103) respectively, that the victim was walking away empty handed when the appellant shot him.

This court has only to go to its own reasoning in Torres 117 SW3d 891 to see why the appellant complains that the 'act of aggression' by the victim who attemted to fight him and then pulled out a pistol, regardless that it became known later that it may or not have been a BB gun would give any normal person rise to fear that his life was in danger.

The court of appeals used this same line of reasoning in Torres, whereas the victim in that case, climbed up the second story balcony outside a bedroom window, unannounced and uninvited at 6:30 am, before being shot in the face and abdomen. The victim was not found outside where he acted aggressively in climbing the balcony, but inside the apartment, in the bathroom. The justices here, erroneously decided that because the decedent was not shot and killed at the very exact moment that the acted in an aggressive manner, that the defendant did not have the right to bring his past unlawful acts to the attention of the jury.

The Court of Criminal Appeals in that case reversed the judgement of the court of appeals stating;

> "Here, the proffered testimony revealed that, two days before he was killed, Valdez entered the apartment by climbing thru a window. He threatened Diane and her children that 'he would do something to hem' if she did not tell him where Roxanne was. This shows a mind set of violence against those who might stand between him and Roxanne. it could also explain Valdez's unorthodox entry by demonstrating the intent or motive of getting back with Roxanne one way or another, or keeping others away from Roxanne by violence if necessary. Because the

4.

proferred testimony was probative of the deceased's state of mind, intent, and motive, we hold that the court of appeals erred in concluding that the evidence was relevant only to character conformity."

Applying the holding of the Courts' decision in Torres to this present case, the decedent's repeated acts of violence directed at Wright, the girlfriend and the fact that he threatened her the day he was killed show a mindset of violence against not only Wright, but 'anyone' who might stand between him and Wright, or anyone who he deems not fit to associate with his children.

It is undisputed that Knighten acted aggressively. The court of appeals concedes this point on page 14, top paragragh:

"At the time of the rulings, witnesses had testified that Knighten acted aggressively before arriving at the apartment complex and upon doing so, but no witnesses had testified that he was still outwardly aggressive at the moment of the killing."

This is exactly why this court decided the way it did, because the court of appeals is confusing the phrase, 'at the time of the killing' to mean the very second the defendant pulls the trigger. The Court of Criminal Appeals refused the court of appeals reasoning and made it clear that these acts of the victim, once it is shown that he was the first aggressor, will be admissable to support a claim of self-defense. James v. St 335SW3d 719.

The court of appeals misunderstood the law in any case, because the law does not require evidence of some act of aggression 'at the actual moment of the shooting.' The law requires there to be 'some evidence of aggression by the deceased during the events that gave rise to the criminal charges in the case before the

5.

defendant may introduce evidence of a prior specific violent act that tends to explain the deceased's later conduct. Torres 117 SW3d 891.

So the question, 'did the court of appeals misconstrue the Court of Criminal Appeals reasoning and decision concerning what constitutes an act of aggression and at the time of the killing, and did that misunderstanding conflict with established law and rules set out by the CCA should be answered in the affirmative. The court of appeals, again, reasoned within themselves and that decision they made clearly conflicted with the decision of this court, the Court of Criminal Appeals.

Accordingly, 'when the claimed error is the exclusion of a relevant piece of evidence, as it is here, conducting a meaningful harm analysis would necessarily require consideration of all evidence which was admitted at trial.' in this case all evidence on the part of the victim was excluded, and as will be show, all evidence, regardless, if it were admissable or not was given to the jury, unabated, on the part of the appellant.

Because the error had a substantial and injurious influence in determinging the jury's verdict, a substantial right of the App. was affected, and this court should therefor reverse the appellant's conveiction on this issue and remand this cause back to the trial court for further proceedings. See Rule 61.1 of the TRAP.


Question FOR REVIEW #2

Did the Court of appeals abuse its discretion by upholding the trial court's ruling by not allowing a very important witness to the defense to answer questions, which the state objected would

6.

either not have been hearsay or would have been an exception to the rule against hearsay?

The appellant has preserved this error for review by making the substance of the excluded testimony known to the trial court, per the Tex. Ruels of Evi. 103(a)(1). (RR005,73,144,147)

A short list of the discourse is in the court of appeals Memorandum opinion on page 18 and 19 as quotes from the trial. The State objected to the girlfriend of the decedent, Sharrell Wright's testimony concerning statements the decedent made during a phone call before he ventured to the home of the appellant and the girl-frined.

The State objected to hearsay five times, interrupting Wright's answers to defense counsel's question about what happened after Appellant handed her the phone, if knighten, the decedent, threatened her, what Knighten yelled at her over the phone, what he yelled to her once he came to the house, outside, and what he said that made her think he was going to use the gun.

The question here is did the court of appeals decide this issue contrary to established precedent, or did it misconstrue Rules or the law.

The court of appeals avered in its opinion on page 19 that:

> "The state contends, and we agree, that any erro in sustaining the hearsay objections did not cause harm under rule 44.2(b) because the trial court admitted other evidence reflecting on appellant's and Wright's mental states at the time of the shooting."

Appellant's offer of proof revealed that had Sharrel Wright been allowed to testify, she would have testified that knighten threatened her, that she believed him, and that knighten threat-

7.

ened to "come and get the kids" and "to kick her ass".(RR005,144)

The court of appeals misunderstood the rule against hearsay, Tex. R. Evid. 801. Threats are not hearsay. (See eg. Thompkins v. Cyr, 202 F. 3d 770, 779 n. 3 5th Cir. 2000)(co-defendant's threats were not hearsay, "because not offered for their truth: the threats are verbal acts.") Even if the statements of Knighten were offered in evidence to prove the truth of the matters asserted, they were admissable as statements of the declarant's then existing state of mind or emotion, Tex.R.Evi. 803(3), and the testimony of what knighten yelled at Wright on the phone was also admissable as an excited 'utterance' under TexR. Evid. 803(2).

The appellant asks this honorable court to see the seriousness of this error. The appellant again points to the court of appeals whitewashing of the trial courts exclusion of admissable evidence, not as hearsay, but as verbal acts and excited utterance.

On page 21 of the curt of appeals memorandum opinion, the court explained;

> "...she clearly communicated her state of mind during the
> incident that led to knighten's death. She tesified that
> while talking on the phone, Knighten became 'real' upset and
> 'angry' and was yelling at her. She also testified that
> when Knighten arrived at the house, he was "arguing and
> cussing, and jumping up and down." She explained that
> Knighten was still yelling after she went inside and out
> the apartment...Considering the record as a whole, we
> conclude that the trial court's error, if any, in
> excluding parts of Wright's testimony on the ground of
> hearsay did not affect appellant's substantial rights..."

The appellant pleads with this court to use its powers of equity, realizing that the fact that the court of appeals is wrongly labeling the error or objection as hearsay, disqualifies

its reasoning when relating the error to the rule of law.
If it were hearsay, then a substantial right mah have not been
affected since other evidence of the same nature was admitted.
However, if this testimony is in fact admissable under an
'excited utterance' or a 'verbal act', then it is no doubt
that a substantial right was affected, and because it had
an injurious influence in determining the jury's verdict, a
substantial right was affected, and this court should reverse
Appellant's conviction on the issue and remand this cause back
to the trial court for further proceedings. See TRAP 61.1


QUESTION FOR REVIEW #3

Did the court of appeals improperly decide that appellant did
not preserve his objection to the state's use of his prior
aggravated robbery charge during its case in chief, after he
stipulated to the fact that he had a prior felony conviction?

. This error is an instance where as the law is clear on a
particular rule or piece of evidence, but a supervisory court
totally disregard the obvious error in favor of the state on
a technicality as here, the complained of error wasn't preserved
becasue his complaints on appeal do not match his hearsay
objections at trial.

This Court, the Court of Criminal Appeals(CCA) has ruled that
'a defendant's stipulation ' to a previous conviction should
suffice when it carries the same evidentiary value as the
judgements of prior convictions, yet substantially lessens
the likelihood that the jury will improperly focus on the
previous conviction or the defendant's bad character'.Tamez

9.

v. St. 11Sw3d 198, 202(TexCrimApp.2000)). Appellant's conviction for murder and unlawful possession of a firearm should therefore be reversed, and this case should be remanded for further proceedings.

Appellant had been conviced of aggravated robbery in Criminal District Court no. 5 of Dallas County in 2004(RR009,Exhibits no. 47-48) Thru its conduct at trial, the state betrayed its awareness of the risk that this evidence would lead to a verdict tainted by improper considerations. The state went inot the details of Appellant's aggr. rob. conviction over his objection, during its cross-examination of the Appellant.(R006,51-76)

As the u.S. Supreme Court noted in Old Chief, the risk of unfair prejudice to a defednant is especially obvious in a case where the defendant's prior conviction was for a crime similar to other charges in a pending case.OLD CHIEF v. US 519, 172,174 (1997)

This is indicative of why safeguards like these cases are put in place to protect an individual from the 'almighty state'. The state here, purposely interjected the details of the appellant's prior conviction solely to infuence the minds of the jury, because the appellant had already stipulated to the fact that he was convicted of a felony.

This is without a doubt frounds for reversal, but the court of appeals again went out of its way to deny the appellant a fair and impartial trial, when it sided with the state and the trial court who side-stepped the amin issue and brought up the oldest

10.

trick in the book, improper objection, thus saving nothing for review.

Its indisputed that a trial, when the state offered records related to appellant's prior conviction the agg. robb. appellant objected on the grounds that the records were hearsay, the trial court overruled the objection and admitted the records, which included a 2004, judgement of conviction, a fingerprint certificate, a copy of a plea agreement, and the indictment.

The court of appeals again misconstrued well-known rules when it totally disregard the TRAP 33.1(a)(1), which states;

> "To preserve a complaint for review, a party must have presented to the trial court a timely request, objection, or motion that states the specifiec grounds for the desired ruling if they are not apparent from the context of the request.'

This is a twofold statement, there must be a timely objection stateing the specific grounds 'if' they are not apparent from the context of the request.

here, in the current case, the appellant objected to hearsay and again mentioned the stipulation when it was obvious from the context that the State was offering to introduce to the jury the defendant's conviction for agg. robbery. This objection was made in the context of the state breaking known rules and regu-lations from which the trial court, quickly overruled and admitted anyway, was a clear preservation of the claimed error.

The Appellant asks that this court reverses his conviction and sentence on this issue and remand this case back to the trial court or the court of appeals for further proceedings. See TRAP 61.1

11.

QUESTION FOR REVIEW #4

Did the court of appeals decide the issue of sudden passion in an uninformed way toward the appellant?

At the punishment stage of the trial, a defendant convicted of murder may raise the issue as to whether he caused the death under the immediate influence of 'sudden passion' arising from an adequate cause. Tex. penal Code Ann§19.02(d)

As defined by the penal code 'sudden passion' means passion directly caused by and arising out of provocation by the individaul killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation.

Appellant took the stand and testified that, at the time he fatally shot knighten, he felt he 'had to defend himself' and that if he had known Knighten's gun wasn't real or if knighten had not had a firearm period then he wouldn't never had run and got the rifle."(RR008,15-16)

The State put on no evidence that contradicted this testimony. in fact, what reasonable person who is physically threatened at the onset of an altercation and then being put in fear of death by a person weilding a pistol would not act as appellant did?

This is clearly 'sudden passion' and this is why the legislatures enacted this law and provided rules and regulations to govern it.

Accordingly, Appellant request this court vacate his sentence and remand this cause to the trial court or the court of appeals for a new trial ro further consideration. See TRAP 61.1

12.

QUESTION FOR REVIEW #5

Was the court of appeals decision that the trial court did not abuse its discretion for overruling appellant's objections to the state's closing arguments overly critical, in that it, upon its own, found that appellant waived those complaints for not continuing to object or maintain a running objection and was the state's closing arguments proper?

pages 22,23,24,25, and 26 of the memorandum opinion of the court of appeals 02-13-0056-CR in the courts reasong for denying the appellant his right to a fair trial and not to be subjected to prosecutorial misconduct, specifically the closing argument by the state.

To be permissable, the State's jury argument must fall within one of the following four general areas (1) summation of the evidence, (2) reasonable deduction from the evidence,(3) answer to argument of opposing counsel, or(4) plea for law enforcement. Fielder v. St. 848 SW2d 85(TexCrim. App.1992)

"Before a defendant will be permitted to complain on appeal about an erroneous jury argument or that an instruction to disregard could not have cured an erroneous jury argument, he will have to show he objected and pursued his objection to an adverse ruling."Cockrellv. St 933SW2d 73,89(TexCrim.App1996)

The appellant plainly and clearly satisfied this criteria as shwon in the Reporter's Record9RR006,141,144,146,147,148, thus appellant has preserved this error for review by timely objecting and by pursuing his objection to an adverse ruling from the trial court.

The appellant avers that the State, the adversary in this suit, did not complain that there was a preservation issue

13.

concerning the forfeiture of a complained of error. on page 22 of the court of appeals Memo opinion, the footnote specifically, it is shown that the court sua sponte raised the issue that the appellant did not properly preserve his errors because when he objected and the trial court denied him, the state continued its same line of questions without further objections.

This is against known procedure. The court of appeals on its own, using Gipson v. St.383 SW3d 152, 159(Tex.Crim.2012) to justify its standing.

Without re-writing the well documented errors, the appellant will focus on one and continue to preserve all for later review.

Rule 404(b) expressly forbids the state from using evidence of other crimes, wrongs or acts of Appellant to prove his character 'in order to show action in conformity therewith'. yet the district attorney urged the jury to do just that when he argued;

> 'That is Appellant's conduct. Thats who he is. Thats what he is. And you know it is. And you know that by his testimony..." (RR008,145-146)

Just like in Walker v. St. where the prosecutor said of that defendant 'This is what he does for a living'.Walker 644SW2d338 (Tex. CrimApp1984) just like Walker this argument 'could only have been made in an attempt to influence the minds of the jurors in order to secure a favorable verdict.

Based on balancing tests, the State's improper jury argument affected a substantail right of appellant, and because a right was affected, this court should therefore reverse Appellant's conviction on this issue. See TRAP 61.1

14.

## PRAYER

All things considered, the Appellant, Artis Leon Polk, humbly prays this court consider the issues at hand and rule in his favor and reverse the convictions hereby attested, and alot any other remedy at law.

## CERTIFICATE OF SERVICE

I certify that the same has been served to the State's opposing counsel on this day_____.

## SWORN DECLARATION

I do hereby state under penalty and perjury of law that the foregoing is true and correct to the best of my knowledge.

_Artis Leon Polk Jr._

Artis leon polk Jr.
McConnell Unit
3001 S. Emily Dr.
Beeville, Tx.  78102

*App. A.*



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-13-00556-CR

Artis Leon Polk Jr.   § From the 432nd District Court

§ of Tarrant County (1305834D)

v.   § April 23, 2015

§ Opinion by Chief Justice Livingston

The State of Texas   § (nfp)

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgments. It is ordered that the judgments of the trial court are affirmed.

SECOND DISTRICT COURT OF APPEALS

By  /s/ Terrie Livingston
   Chief Justice Terrie Livingston



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00556-CR

ARTIS LEON POLK JR.                                                                    APPELLANT

V.

THE STATE OF TEXAS                                                                         STATE

----------

FROM THE 432ND DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 1305834D

----------

## MEMORANDUM OPINION[1]

----------

Appellant Artis Leon Polk Jr. appeals his convictions for murder and unlawful possession of a firearm.[2] In five issues, he argues that the trial court abused its discretion by excluding and admitting evidence and by overruling his objections to parts of the State's closing argument concerning his guilt and that

---

[1]See Tex. R. App. P. 47.4.

[2]See Tex. Penal Code Ann. §§ 19.02(b)(1)–(2), 46.04(a) (West 2011).

the evidence is factually insufficient to support the jury's rejection of his claim that he killed the victim under the influence of sudden passion. We affirm.

## Background Facts[3]

Charles Knighten and Sharell Wright, who once dated but later separated, shared custody of their children. Knighten and Wright agreed that Wright would not bring other men around the children. Appellant was Wright's boyfriend, and she brought him around the children.

On Thanksgiving Day in 2012, Knighten called Wright on the telephone. Although Wright told appellant not to answer the call because she knew that his doing so would upset Knighten, appellant answered the call. Knighten became upset.

Knighten, who was twenty-three years old, rode from Dallas with his mother, Latomi Burrows, and her boyfriend, John Reed, to Arlington, although Wright had told him not to come. As they entered the apartment complex where Wright's mother lived, appellant, who was standing outside, began taking off his jewelry and shirt and acting like he was preparing to fight. Knighten got out of his car and walked toward appellant while apparently intending to fight, but Burrows and Reed attempted to intervene.

---

[3]The facts in the first part of this section comprise the testimony of all witnesses other than appellant. Appellant provided contrary testimony that we summarize below.

Wright went inside the apartment because she wanted to avoid any confrontation. She later came out of the apartment and saw Knighten yelling, "cussing," and "jumping up and down." At some point, Knighten took a small gun out of his pants although Reed attempted to prevent him from doing so. To Wright, the gun looked like a real handgun. Reed later discerned that it was a BB gun. According to Wright's testimony, Knighten waved the gun at her and appellant, and she feared for her life and believed that Knighten would shoot her.

As Reed and Burrows continued their attempts to keep Knighten away from appellant, appellant and Wright retreated into the apartment and locked the door. At that time, Knighten was on steps that led up to the apartment. He never entered the apartment, but he knocked on the door and said that he just "want[ed] to see his kids" for Thanksgiving. He eventually stopped doing so.

When appellant and Wright entered the apartment, appellant went to a bedroom, grabbed a large-caliber rifle, and then came back toward the apartment's front door. Wright pleaded with him not to go back outside, but appellant opened the door and stepped outside the apartment.[4] As Knighten

---

[4]At trial, Wright conceded that the events initially occurring outside the apartment were concluded and that she would not have gone back outside. A police officer testified that on the day of the shooting, Wright told her that she had seen the assault rifle before appellant opened the door, that she had begged appellant to not go back outside, and that appellant had "physically pushed her, unlocked the door[,] and then exited." The officer also testified that Wright said on the day of the shooting that she knew Knighten would not have fired his gun and that she had seen him place the gun back in his pocket as she was going inside the apartment.

3

was walking toward Burrows and away from the apartment, appellant said, "This is how it's going to be, bro." Knighten turned around, and appellant repeatedly shot him with the rifle. Knighten's hands were empty at that time, according to multiple witnesses, and appellant's gun was powerful enough to raise Knighten off the ground and to cause him to violently shake while being hit with bullets. Even after Knighten was on the ground, appellant hovered over him and continued to shoot him.

Burrows and Reed ran toward Knighten and attempted to help him. Wright also attempted to help him by compressing his chest. Appellant went back into the apartment to look for his keys, eventually came out again, grabbed the BB gun from near Knighten's waist, stepped over him, and drove away.

Multiple people called 9-1-1. When police officers arrived at the scene, they saw a large amount of blood; spent shell casings; projectile fragments; many BBs; and several people, including Knighten's mother, attempting to resuscitate him. Soon thereafter, medical personnel arrived, assessed Knighten, and determined that he was dead. Officers began talking to witnesses at the scene. With the intent to turn himself in, appellant eventually returned to the apartment complex, and the police arrested him.

---

Wright testified that she did not see the rifle before appellant went back outside. She also testified that only seconds elapsed from the time Knighten banged on the door until appellant went back outside to confront him. Finally, she testified that she was afraid for her life even after she had returned to the apartment and had locked the door.

4

Knighten's autopsy revealed many entrance and exit gunshot wounds. Dr. Nizam Peerwani determined that twelve bullets had struck Knighten's body; that some bullets had entered through his back; and that two wounds, including one that severed an artery and another that lacerated the heart, were nearly instantly fatal.

A grand jury indicted appellant with murder and with unlawful possession of a firearm. The indictment alleged that appellant had been previously convicted of another felony. Appellant received appointed counsel, filed several pretrial motions, and pled not guilty.

At trial, appellant testified that he had not known how to use Wright's phone when Knighten had called her on the day of the shooting. He explained that when he had answered the phone by pushing "the little phone thing," Knighten had said, "Put Sharell on the phone." Appellant also stated that he had heard Knighten say "disrespectful" words to Wright. According to appellant, Knighten began yelling, and Wright started crying.

Appellant testified that when Knighten had arrived at the apartment complex, appellant had not been preparing to fight but was simply changing clothes while preparing to meet some of his family later that day.[5] As Knighten walked toward appellant, Knighten said, "Man, y'all got me f----d up."

---

[5]On the day of the shooting, Wright told a police officer that appellant had been preparing to fight Knighten.

5

According to appellant, Knighten had the BB gun in his hand when he first arrived at the apartment complex and approached appellant. Appellant testified that Knighten had cocked the gun, that Knighten had said that he would kill him, that appellant had believed that Knighten was trying to kill him, and that appellant had been scared. Appellant testified that as Knighten had pointed the gun at him and Wright, Wright had cried and had appeared scared.

Appellant testified that after he had entered the apartment to get his rifle and had come back outside, Knighten had stood "right there [and was] coming towards the door." He said that Knighten had not ever stopped knocking and had not walked away from the apartment's door; he explained that Knighten had tussled with Wright over the door and that Knighten would have eventually forced his way inside.[6] Appellant testified that he had fired the rifle because he was scared and believed that Knighten was "fixing to kill [him]." According to appellant, just before he fired, Knighten said, "Bitch-ass ni----." He testified that if he had not gotten the rifle, Knighten would have shot him and Wright, and they would be dead. Appellant explained,

> I was scared. I . . . shot him out of instinct. He . . . spooked me. He . . . was so close, and the gun was pointed in my face, and I just jumped back and fired.

---

[6]Thus, appellant testified that Wright had lied when she testified that the door was locked and the incident had concluded before appellant opened the door and went back outside.

6

I kind of ducked like sideways from the door, and that's how I ended up like close to the wall right there, the back of the wall, and I fired.

. . . .

. . . He got a gun in our face. And that was the last option. That was . . . totally the last option. I could have ran and got the rifle as soon as he got out the car. But I didn't.

Appellant described the shooting as occurring abruptly; he explained that he only remembered "a couple of shots." He testified that after he had finished shooting Knighten, he had retrieved Knighten's gun. He denied shooting Knighten after Knighten was already on the ground.

On cross-examination, appellant admitted that he had a "bunch of" prior convictions, including felony convictions. Appellant also conceded that his version of the events was unique, but he stated that all other witnesses to the events were "buddies" and had been communicating with each other.

After the parties completed their presentation of evidence and arguments in the guilt-innocence phase of the trial, a jury convicted appellant of both counts. The jury then heard evidence concerning appellant's punishment and assessed ninety-nine years' confinement for murder and twenty years' confinement for unlawful possession of a firearm.[7] The jury did not find that appellant had acted with sudden passion when killing Knighten. The trial court sentenced appellant in

---

[7]Appellant pled true to the repeat offender notice in his indictment.

accordance with the jury's verdicts and ordered the sentences to run concurrently. Appellant brought this appeal.

## Admission and Exclusion of Evidence

In his first three issues, appellant argues that the trial court abused its discretion by excluding evidence that he proffered and by admitting evidence offered by the State. We review a trial court's admission or exclusion of evidence for an abuse of discretion. *Bosquez v. State*, 446 S.W.3d 581, 585 (Tex. App.—Fort Worth 2014, pet. ref'd) (mem. op.); *Sanders v. State*, 422 S.W.3d 809, 812 (Tex. App.—Fort Worth 2014, pet. ref'd). An abuse of discretion occurs when the trial court's ruling is so clearly wrong as to lie outside the zone of reasonable disagreement. *Sanders*, 422 S.W.3d at 812–13; *see also Petriciolet v. State*, 442 S.W.3d 643, 650 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) ("We consider the trial court's ruling in light of the evidence presented at the time of its ruling . . . . We cannot conclude that a trial court abused its discretion merely because, under the same circumstances, we might have ruled differently."). Even if a trial court abuses its discretion by admitting or excluding evidence, we may not reverse the trial court's judgment based on that ruling unless the record shows that the appellant suffered harm. *See* Tex. R. App. P. 44.2(b) ("Any [non-constitutional] error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."); *Walters v. State*, 247 S.W.3d 204, 219 (Tex. Crim. App. 2007) ("The erroneous exclusion of evidence offered under the

rules of evidence generally constitutes non-constitutional error and is reviewed under Rule 44.2(b).")

**Knighten's violent history**

In his first issue, appellant contends that the trial court abused its discretion by excluding evidence of Knighten's past violent acts during Reed's and Wright's testimony. He argues that this evidence was relevant and necessary to "corroborate [his] version of events and to show . . . Wright's state of mind, [his] state of mind[,] and the reasonableness of his claim of apprehension of danger."

During Reed's testimony, outside the presence of the jury, the trial court held a hearing about whether Knighten's prior conviction for assault against Wright was admissible. The State argued that evidence of the conviction was not admissible because there was no showing that appellant was aware of it at the time of the shooting. Appellant argued that the State had opened the door to evidence of the conviction during its questioning of Reed, but the trial court disagreed and ruled that the evidence was not admissible.

Later on the same day, outside of the jury's presence, appellant again argued that evidence of Knighten's prior acts of violence should be admissible because such evidence affected "whether or not there was provocation" or self-defense. The trial court ruled that appellant would not be allowed to reveal Knighten's prior acts.

9

The next day, appellant again contended that he should be allowed to present evidence of Knighten's past violent acts. His counsel argued,

> [Appellant] intends to put on theories of self-defense, defense of other, and . . . a necessity instruction that we'll be seeking.
>
> We are aware that the decedent, Charles Knighten, has a prior history of assault family violence on one of the witnesses in the case, particularly the girlfriend of [appellant].
>
> We are also aware that there's been a previous history of assault family violence on his sister that many of the witnesses have personal knowledge of. . . .
>
> . . . .
>
> We are not seeking to admit the evidence of the prior convictions and episodes of family violence for purposes of character or conformity therewith. We're seeking to admit them, number one, for [appellant's] state of mind for the self-defense and also the defense of other's claim . . . .
>
> . . . .
>
> *[The evidence would show] my client's state of mind at the time of the shooting and also . . . develop that the decedent was actually the first aggressor . . . .*
>
> . . . .
>
> And I think that it's important that the witnesses, if they have personal knowledge, that I be allowed to question them about their personal knowledge pertaining to the decedent as concerns him being the first aggressor and what was known to the parties that would contribute to the state of mind of my client at the time he reacted and what those people know personally as to what my client knew. [Emphasis added.]

The State responded by contending that evidence related to appellant's state of mind was inadmissible until he testified and that any aggressive act by Knighten outside of the event leading to his death was inadmissible under the

10

circumstances, in which Knighten was walking away when appellant shot him. With the jury absent, Reed testified that he had been in a physical fight with Knighten that concerned Knighten's children. Reed also stated that he knew Knighten had a history of responding to attacks by "attack[ing] back." Although Reed testified that Knighten was angry when he arrived at the apartment and directed inappropriate words toward Wright, Reed also explained that Knighten later calmed down and that "two incidents happened" that day: "One incident was when [Knighten] made his mistake; the other incident was when [Knighten's] life was [taken]." The trial court once again denied appellant's request to present evidence about Knighten's extraneous acts, explaining, "You can go into the facts of [the date of Knighten's death]. That's clear. . . . However, you're not going into any extraneous acts that you've discussed thus far or [have] been presented by the testimony. It is not appropriate at this time . . . ."

Finally, appellant also called Wright to testify outside the presence of the jury. Wright stated that on the day of Knighten's death, he had threatened to "beat [her] ass" and that she had believed he would do so that day because he had physically abused her on ten to twenty prior occasions. She also stated that on the day of the offense, Knighten called her a "bitch" and a "whore." Finally, she stated that she saw Knighten pull out a gun (later determined to be a BB gun) before she and appellant retreated into her mother's apartment. The trial court ruled that as Wright's testimony pertained to the day of the murder, it was admissible, but as it concerned events before that, it was not.

11

Appellant relies on article 38.36(a) of the code of criminal procedure and rule of evidence 404 to contend that the evidence of Knighten's past violence was admissible when it was offered. *See* Tex. Code Crim. Proc. Ann. art. 38.36(a) (West 2005) ("In all prosecutions for murder, the [parties] shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing . . . , together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense."); Tex. R. Evid. 404(a)(3) (stating that evidence of a pertinent character trait of a victim may be admissible).

As the court of criminal appeals has explained,

> The general reputation of the deceased as a violent and dangerous [person] and specific acts of violence or misconduct of the deceased which show his violent character are admissible in a homicide case *where there is evidence of some act of aggression by the deceased which gives rise to a claim of self-defense on the part of the defendant.* If offered to show the reasonableness of the defendant's claim of apprehension of danger, it must be shown that the acts of violence were known to the defendant at the time of the homicide; if offered to show that the deceased was in fact the aggressor, the witness must know, but the defendant need not have known of the violent acts at the time of the homicide.

*Beecham v. State*, 580 S.W.2d 588, 590 (Tex. Crim. App. [Panel Op.] 1979) (emphasis added) (citations omitted); *see Mozon v. State*, 991 S.W.2d 841, 845–46 (Tex. Crim. App. 1999) ("[E]vidence of a victim's character for violence remains admissible to show the victim was the first aggressor. A victim's extraneous acts of violence also remain admissible to show the defendant's state of mind."); *Chapa v. State*, 703 S.W.2d 422, 424 (Tex. App.—Fort Worth 1986,

12

no pet.). "As long as the proffered violent acts explain the *outward aggressive conduct of the deceased at the time of the killing*, and in a manner other than demonstrating character conformity only, prior specific acts of violence may be admitted even though those acts were not directed against the defendant." *Torres v. State*, 71 S.W.3d 758, 762 (Tex. Crim. App. 2002) (emphasis added). The prior acts of violence by the deceased must be relevant "to the ultimate confrontation" between the defendant and the deceased. *Id.* at 761; *see also Torres v. State*, 117 S.W.3d 891, 895 (Tex. Crim. App. 2003) ("For Diane's testimony to be admissible *at the time it was offered*, there must have been evidence of an act of aggression by the deceased *that tends to raise the issue of self defense.*" (emphasis added)).

Under this authority, as judged by the state of the record at the time that the trial court made its rulings, we cannot conclude that the court abused its discretion by excluding evidence of Knighten's past violence. *See Torres*, 117 S.W.3d at 895. First, we cannot conclude that the evidence was admissible to show appellant's state of mind because at the time of the trial court's rulings, the record did not contain any evidence indicating that appellant knew at the time of the shooting of Knighten's propensity for violence. *See Beecham*, 580 S.W.2d at 590.

Second, we cannot hold that the evidence was admissible to show Knighten's character for violence because at the time of the trial court's rulings, there was no evidence of any aggression by Knighten "at the time of the killing"

13

which could give rise to appellant's claim of self-defense. *See Torres*, 71 S.W.3d at 762; *Beecham*, 580 S.W.2d at 590. At the time of the rulings, witnesses had testified that Knighten had acted aggressively before arriving at the apartment complex and upon doing so, but no witness had testified that he was still outwardly aggressive at the moment of the killing. *See Torres*, 71 S.W.3d at 762.

Instead, at the time of the trial court's last ruling on appellant's request to present evidence of Knighten's violence, Reed had testified that when appellant unlocked the apartment's door and came outside with the rifle, Knighten was walking away from the door with his back turned to it and with his hands up. According to Reed, appellant said, "This is how it's going to be, bro" before shooting Knighten. Reed had also testified that appellant was in the apartment five to fifteen minutes before leaving it and shooting Knighten. Another witness to the shooting, Porter Lewis, had testified that when Knighten knocked on the apartment's door, he stated that he just wanted to see his children, and he walked away from the door with nothing in his hands before being shot. Wright had testified, outside the presence of the jury, that she had closed the door behind her when she entered the apartment. Although she had testified that Knighten banged on the door and that she thought he was trying to get to her, she had not contradicted Reed's and Porter's testimony that at the moment of the shooting, Knighten's back was turned to appellant, and Knighten had empty

14

hands.[8] In other words, as the State contends, at the time appellant offered evidence of Knighten's violence, the uncontroverted evidence established that Knighten was walking away from the apartment (and therefore from appellant) empty handed when appellant shot him.[9]

Thus, at the time of the trial court's rulings, the jury had not heard of any "act of aggression by [Knighten] which [gave] rise to a claim of self-defense on the part of [appellant]." *Beecham*, 580 S.W.2d at 590; *see Torres*, 71 S.W.3d at 762 (explaining that there must be "outward aggressive conduct of the deceased *at the time of the killing*" (emphasis added)); *see also* Tex. Penal Code Ann. § 9.32(a)(2)(A) (West 2011) (stating that deadly force in self-defense must be "immediately necessary" to protect against unlawful deadly force); *Bennett v. State*, 726 S.W.2d 32, 37–38 (Tex. Crim. App. 1986) (holding that reasonableness of fear for a self-defense claim must be judged from the standpoint of the accused at the "*instant* he responds to the attack" (emphasis added)); *Oestrick v. State*, 939 S.W.2d 232, 238 (Tex. App.—Austin 1997, pet. ref'd) (holding that a defendant was not entitled to a self-defense instruction

[8]After the trial court's last ruling on appellant's request to present evidence of Knighten's violence, during Wright's testimony in front of the jury, she testified that she did not "actually see the shooting" and conceded that what had happened outside was "over" when appellant unlocked the apartment's door, opened it, and shot Knighten.

[9]Appellant argues that he "testified that Knighten was right outside the door 'coming towards' him when he began shooting." But appellant testified after the rulings at issue, and he did not again ask to present testimony from other witnesses about Knighten's violence after his testimony.

15

when the victim had a baseball bat but was walking away from the defendant when the defendant shot the victim).

For these reasons, we hold that the trial court did not abuse its discretion by excluding evidence of Knighten's violence, and we overrule appellant's first issue.[10]

**Appellant's prior conviction**

In his second issue, appellant argues that the trial court abused its discretion by admitting records related to a prior felony conviction. He contends that

> (1) the name or nature of the prior offense raised the risk of a verdict tainted by improper considerations; (2) the purpose of the evidence was solely to prove the element of [the] prior conviction; (3) [a]ppellant's stipulation carried the same evidentiary value as the judgments of prior convictions; and (4) [a]ppellant's stipulation substantially lessened the likelihood that the jury would improperly focus on the previous conviction or his bad character.

To obtain a conviction for unlawful possession of a firearm, the State was required to prove that appellant had a prior felony conviction. *See* Tex. Penal

---

[10]We also note that through appellant's testimony, the jury learned about Knighten's past violence. Appellant testified that at the time he shot Knighten, he knew that Knighten was "seriously dangerous" and was the subject of a restraining order because he had beaten Wright in the past. He explained in part,

> He beats her, he hits her with whatever he can find, he hurts her in front of his family, the dude, Reed and his -- and his mother, and they -- they tell her to stop making him mad, something like that.
>
> . . . She scared to go to court. I don't know how serious they went, but I know she scared to call the police.

16

Code Ann. § 46.04(a). At trial, when the State offered records related to appellant's prior conviction for aggravated robbery, appellant objected on the ground that the records were hearsay, and he offered to stipulate to the fact that he had a prior felony conviction. The trial court overruled the objection and admitted the records, which included a 2004 judgment of conviction for aggravated robbery, a fingerprint certificate, a copy of a plea agreement, and the indictment.

The State argues, in part, that appellant did not preserve error because his complaints on appeal do not match his hearsay objection at trial. We agree. To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Everitt v. State*, 407 S.W.3d 259, 262–63 (Tex. Crim. App. 2013). Preservation of error is a systemic requirement. *Reynolds v. State*, 423 S.W.3d 377, 383 (Tex. Crim. App. 2014).

A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial. *See Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014), *cert. denied*, 135 S. Ct. 1158 (2015); *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) ("Whether a party's particular complaint is preserved depends on whether the complaint on appeal comports with the complaint made at trial."); *Marchbanks v. State*, 341 S.W.3d 559, 565 (Tex. App.—Fort Worth 2011, no pet.) ("An objection preserves only the

17

specific ground cited."). Appellant did not raise the complaints quoted above at trial, and he does not continue to complain about hearsay—the lone complaint made at trial—on appeal. He did not argue at trial, as he contends on appeal, that his stipulation to the aggravated robbery conviction foreclosed the State's ability to present further evidence of that conviction. Thus, we hold that appellant has not preserved the complaints made within his second issue, and we overrule the issue.[11] *See* Tex. R. App. P. 33.1(a); *Yazdchi*, 428 S.W.3d at 844.

**The State's hearsay objections to Wright's testimony**

In his third issue, appellant contends that the trial court abused its discretion by sustaining the State's hearsay objections to questions that he asked Wright. During Wright's questioning by defense counsel, the following exchanges occurred:

> Q. And did [Knighten] threaten you?
>
> [THE STATE]: Your Honor, at this point we're going to object. That calls for hearsay.
>
> THE COURT: Sustained.
>
> Q. . . . What did he yell at you on the phone?
>
> [THE STATE]: Your Honor, it's hearsay.

---

[11]Moreover, appellant later testified during the guilt-innocence phase, without a running objection and in response to questions by the State and his counsel, about details of his aggravated robbery conviction along with other convictions. Thus, even if the trial court had erred by admitting evidence of the aggravated robbery conviction, the record cannot show harm from that error. *See Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) ("[O]verruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling.").

18

[DEFENSE COUNSEL]: Excited utterance.

THE COURT: Over -- your objection is sustained. . . .

. . . .

Q. And what was [Knighten] yelling?

[THE STATE]: Your Honor, we're going to object. That calls for hearsay.

THE COURT: Sustained.

. . . .

Q. All right. Was Mr. Knighten saying anything that made you think that he was going to use that gun?

[THE STATE]: Your Honor, I'm going to object. That calls for hearsay.

THE COURT: Sustained.

Appellant argues that evidentiary rules did not require exclusion of Wright's testimony. He contends that threats are not hearsay, that the statements reflected on Knighten's then-existing state of mind, and that one statement qualified as an excited utterance. See Tex. R. Evid. 803(2)–(3). He asserts that he was harmed by the exclusion of this testimony because it reflected on Wright's state of mind and his own state of mind, and it therefore supported his claims of self-defense and defense of others. The State contends, and we agree, that any error in sustaining the hearsay objections did not cause harm under rule 44.2(b) because the trial court admitted other evidence reflecting on appellant's and Wright's mental states at the time of the shooting.

19

Under the standard of rule 44.2(b), a substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)). Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

In making this determination, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). Generally, the exclusion of evidence is harmless when similar evidence is admitted. *See Mosley v. State*, 983 S.W.2d 249, 258 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999); *Alvarez v. State*, No. 02-05-00376-CR, 2007 WL 117700, at *1 (Tex. App.—Fort Worth Jan. 18, 2007, no pet.) (mem. op., not designated for publication) ("[T]he trial court's exclusion of the evidence was harmless because similar evidence was admitted through the same witness and two other witnesses later in the trial.").

While the trial court's rulings precluded Wright from testifying about the particular words Knighten said to her on the phone and upon arriving at the

20

apartment complex, she clearly communicated to the jury what her state of mind was during the incident that led to Knighten's death. She testified that while talking on the phone, Knighten became "real upset" and "[a]ngry" and was yelling at her. She also testified that when Knighten arrived at the house, he was "arguing, cussing, [and] jumping up and down." She explained that Knighten was still yelling after she went inside the apartment and came back outside and that at that point, Knighten waved the gun (which she believed was real) at her and appellant. Later, Wright repeatedly testified that she believed Knighten was going to kill her and that she was scared.

Similarly, appellant testified that on the phone, Knighten had said "disrespectful" words to Wright, while screaming and yelling, that caused her to cry. He also explained that after Knighten had arrived at the apartment and had pulled out his gun and again started screaming, Wright was crying. Repeatedly, appellant testified that he had feared for his life because of Knighten's words and actions.

Considering the record as a whole, we conclude that the trial court's error, if any, in excluding parts of Wright's testimony on the ground of hearsay did not affect appellant's substantial rights because Wright and appellant produced similar testimony that clearly communicated their states of mind leading up to the shooting. *See Motilla*, 78 S.W.3d at 355; *King*, 953 S.W.2d at 271; *see also Guerra v. State*, 942 S.W.2d 28, 33 (Tex. App.—Corpus Christi 1996, pet. ref'd) (stating that "no harm results when evidence is excluded if other evidence of

21

substantially the same nature is admitted"); *Akeredolu v. State*, No. 08-07-00191-CR, 2009 WL 1609372, at *2–3 (Tex. App.—El Paso June 10, 2009, pet. ref'd) (not designated for publication) (holding that a trial court's exclusion of a poem written by the deceased to another man, which the defendant claimed was admissible to show his state of mind, was harmless because there was other "abundant evidence concerning the [defendant's] state of mind"). We overrule appellant's third issue.

## The State's Closing Argument

In his fourth issue, appellant contends that the trial court abused its discretion by overruling his objections to parts of the State's closing argument on his guilt. We conclude that appellant forfeited most of the complaints in his fourth issue.[12]

Rule 33.1(a)'s preservation requirements apply to closing arguments. *See Turner v. State*, 87 S.W.3d 111, 117 (Tex. Crim. App. 2002), *cert. denied*, 538 U.S. 965 (2003); *Marchbanks*, 341 S.W.3d at 565. To preserve error on a closing argument, the defendant must object each time the objectionable argument is made or obtain a running objection. *See Wilson v. State*, 179 S.W.3d 240, 249 (Tex. App.—Texarkana 2005, no pet.); *Barnes v. State*, 70 S.W.3d 294, 307 (Tex. App.—Fort Worth 2002, pet. ref'd).

---

[12]Although the State does not argue that appellant failed to preserve error concerning some of the complaints in this issue for the reasons we conclude that he did, we must raise preservation on our own motion. *Gipson v. State*, 383 S.W.3d 152, 159 (Tex. Crim. App. 2012).

Appellant's first complaint concerns the following exchange:

[THE STATE:] You take every word out of [appellant's] mouth as the gospel truth, . . . he's guilty of murder. Why do you know that?

Dr. Peerwani stood up here and told you there's 12 shots. Shot number four was fatal, and it was in his back. How is that self-defense? *Every time you pull a trigger, it has to be justified. Every single time this defendant pulled the trigger --*

[DEFENSE COUNSEL]: Objection; misstatement of the law.

THE COURT: Overruled.

[THE STATE]: *There is no right of continued shooting. You have to have deadly force used against every time you use deadly force.* The man's back was to him. Shot number four was fatal. That was that pristine bullet that you saw. That was that one shot. That shot by itself is fatal. [Emphasis added.]

Appellant's second complaint concerns this colloquy:

[THE STATE:] You'd have to believe he was standing there pointing a gun at him, a BB gun, which by the way, is not a deadly weapon. *And the Judge tells you you'd have to believe that the victim was using deadly force against the Defendant. A BB gun is not --*

[DEFENSE COUNSEL]: Objection; misstatement of the law.

THE COURT: Ladies and gentlemen, you have been given all the law that's contained in the Court's Charge.

Overruled.

[THE STATE]: *Page 8, the Judge says that by the term deadly force is meant that force that's intended or known by the person using it to cause -- BB gun is not capable of causing -- or in the manner of its use or intended use, is capable of causing death or serious bodily injury.*

*No time deadly force is actually being used against him.* It's not capable of doing it, and y'all know that. [Emphasis added.]

23

Appellant's fourth complaint concerns the following part of the record:

[THE STATE:] Because here's what's going to happen. Probably about what, three weeks? Y'all are going to be sitting down eating Thanksgiving dinner. This trial will be over with one way or the other. *And the Judge is going to tell y'all, Hey, y'all can tell everybody about this jury trial. And your relatives --*

[DEFENSE COUNSEL]: Objection; improper argument.

THE COURT: Overruled.

It's a one-minute warning.

[THE STATE]: *Going to ask you what happened.* You're going to say we saw this case -- or the victim acted like a fool, showed up with a BB gun and threatening his girlfriend, threatening this defendant. Well, what happened? Well, everybody went inside the apartment. The door was closed.

Then what happened? He comes out with an assault weapon and blows this guy away 12 times. Well, did the guy point a gun at him? No. You know that because it was in his pocket when he stepped by him.

Where all did he hit him? Well, three shots were in his back and one of those shots was fatal.

Well, what did you do? That's your question. So what are you going to do? [Emphasis added.]

With regard to each of these three parts of the State's closing argument, although appellant objected and the trial court overruled the objection, the State continued making the same argument, and appellant did not object again or obtain a running objection. Thus, we hold that appellant forfeited his complaints concerning these three parts of the State's closing argument. *See* Tex. R. App. P. 33.1(a); *Barnes*, 70 S.W.3d at 307.

Appellant's third complaint relates to this part of the record:

24

[THE STATE:] And you know that by his testimony when he got up here and talked. Since he was 16 and a half years old, every time he gets out of jail or prison for longer than seven months, he goes and commits a new crime. He's been consistent with that for the last 12 years.

[DEFENSE COUNSEL]: Objection; facts not in evidence. He --

THE COURT: Ladies and gentlemen, you will recall the testimony as produced during the trial. Please follow the Court's instructions as contained in the Court's Charge.

Overruled.

[THE STATE]: The Judge tells you in his Charge you're allowed to consider all of his convictions --

[DEFENSE COUNSEL]: Objection; improper argument. May we --

THE COURT: No, you may not approach.

Ladies and gentlemen, you will follow the instructions as contained in the Court's Charge. Thank you very much.

[THE STATE]: I believe it's going to be on page 14. The Judge tells you you're allowed to consider all his convictions to judge his credibility. You saw what happened.

[DEFENSE COUNSEL]: Objection; improper argument.

THE COURT: Ladies and gentlemen, please remember that what the lawyers say is not evidence. This is the opportunity for both sides to sum up their respective cases to point out those strengths and weaknesses of each other's arguments. Please *remember the Court's Charge. Overruled.*

*[THE STATE]: She can't change the facts. The Judge tells you to do it.*

25

*The Judge tells you on page 13 and 14 you're allowed to consider his convictions for who he is and what he is and whether he's believable.*[13] [Emphasis added.]

To the extent that appellant complains on appeal about the State's repeated argument that the jury was allowed to consider his prior convictions to judge his credibility, we similarly conclude that appellant forfeited the complaint by failing to object to each occasion (and particularly the last occasion) that the State made that argument. *See* Tex. R. App. P. 33.1(a); *Barnes*, 70 S.W.3d at 307. But to the degree that appellant independently complains about the distinct part of the argument that he had committed a new crime "every time he [got] out of jail . . . for longer than seven months," we conclude that he preserved the complaint for our review on the legal ground cited (that the facts were "not in evidence")[14] by his timely objection and the trial court's contemporaneous ruling. *See* Tex. R. App. P. 33.1(a); *Marchbanks*, 341 S.W.3d at 565.

We review the trial court's ruling on an objection to the State's jury argument for an abuse of discretion. *See Whitney v. State*, 396 S.W.3d 696, 705 (Tex. App.—Fort Worth 2013, pet. ref'd) (mem. op.). To be permissible, the State's jury argument must fall within one of the following four general

---

[13]Appellant did not object to this final part of the State's argument.

[14]To the extent that appellant complains about this argument on appeal for reasons unrelated to his trial objection that the argument was not supported by evidence, we conclude that appellant forfeited those complaints. *See* Tex. R. App. P. 33.1(a)(1); *Marchbanks*, 341 S.W.3d at 565. Also, to the degree that appellant complains on appeal about other parts of the State's closing argument that he did not object to, we hold that he likewise forfeited those complaints.

26

areas: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to argument of opposing counsel, or (4) plea for law enforcement. *Felder v. State*, 848 S.W.2d 85, 94–95 (Tex. Crim. App. 1992), *cert. denied*, 510 U.S. 829 (1993); *Whitney*, 396 S.W.3d at 704.

Appellant was born in 1983. He stated that he had a drug possession case when he was almost seventeen years old (therefore, in approximately 1999 or 2000), that he was tried as an adult, and that he was sent to state jail for 180 days. According to appellant, from that time on, he continued to commit crimes; he testified that he had a "bunch of" felony convictions. Appellant testified that after he "got old enough to go to jail," the State "kept putting [him] in there." The trial court admitted a March 2004 judgment of conviction for burglary of a habitation. The burglary judgment states that appellant committed the offense in October 2001.

Appellant testified that he was in prison from the age of eighteen until twenty-nine.[15] Appellant was still twenty-nine years old when he killed Knighten, and he had been released from prison for "about seven months" at that time.

Thus, the evidence admitted during the guilt-innocence phase of appellant's trial substantiates the gist of State's argument that from the time

---

[15]The record also contains a March 2004 judgment of conviction for aggravated robbery, for which appellant was sentenced to nine years' confinement. That judgment states that appellant committed aggravated robbery in May 2003. Appellant indicated that he was on bond for burglary when he committed aggravated robbery.

appellant was approximately sixteen years old to the time he killed Knighten, he was continually committing crimes when not confined. Because the State's argument was a summation of the evidence and a reasonable deduction from the evidence, we conclude that the trial court did not abuse its discretion by overruling appellant's objection on the ground that the "facts [were] not in evidence." *See Whitney*, 396 S.W.3d at 704–05; *see also Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988) ("Counsel is allowed wide latitude without limitation in drawing inferences from the evidence so long as the inferences drawn are reasonable, fair, legitimate, and offered in good faith.").

For all of these reasons, we overrule appellant's fourth issue.

## Sudden Passion

In his fifth issue, appellant argues that the jury's decision to not find that he was under the influence of sudden passion when he killed Knighten was against the great weight and preponderance of the evidence and was manifestly unjust. Murder is typically a first-degree felony. Tex. Penal Code Ann. § 19.02(c). But at the punishment phase of a trial, "the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause. If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree."[16]

---

[16]Even if the jury had found that appellant acted in sudden passion and with adequate cause while killing Knighten, appellant still would have faced a first-degree-felony range of punishment because of his prior felony conviction. *See* Tex. Penal Code Ann. § 12.42(b) (West Supp. 2014).

28

*Id.* § 19.02(d); *see McKinney v. State*, 179 S.W.3d 565, 569 (Tex. Crim. App. 2005). "Sudden passion," under the circumstances of this case, means passion provoked by the decedent that "arises at the time of the offense and is not solely the result of former provocation." Tex. Penal Code Ann. § 19.02(a)(2). An "adequate cause" is a cause that would "commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id.* § 19.02(a)(1).

The issue of sudden passion is akin to an affirmative defense because the defendant has the burden of proof by a preponderance of the evidence. *See Matlock v. State*, 392 S.W.3d 662, 667 & n.14 (Tex. Crim. App. 2013); *Bradshaw v. State*, 244 S.W.3d 490, 502 (Tex. App.—Texarkana 2007, pet. ref'd). We review a factual sufficiency challenge to a jury's rejection of an affirmative defense to determine whether the jury's adverse finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Matlock*, 392 S.W.3d at 671. We consider the evidence in a neutral light, but we may not "usurp the function of the jury by substituting [our] judgment in place of the jury's assessment of the weight and credibility of the witnesses' testimony." *Id.*

Appellant contends that the evidence shows that when he shot Knighten, he was in a state of desperation and terror because he believed Knighten's gun was real, he was attempting to defend himself, and Knighten was near him at the time he opened the apartment's door and fired the rifle. Appellant asserts that "the State put on no evidence at the trial on [his guilt] or the trial on punishment

29

that contradicted . . . [his] testimony that he shot Knighten when he saw Knighten right outside the apartment 'coming towards the door.'"

We cannot agree. As described above, the jury heard during the first phase of appellant's trial that after appellant and Wright had entered the apartment and had closed and locked the door, Knighten had knocked on the door but had not had anything in his hands. Lewis testified that Knighten was walking away from the door when appellant opened it and shot Knighten from five to six feet away. Reed testified that appellant said, "This is how it's going to be, bro," before shooting Knighten repeatedly. Reed and Lewis also stated that after Knighten was on the ground, appellant stood over him and continued to shoot him. Wright conceded that the incident that had occurred outside was "done" and that she would not have gone back out there. A police officer testified that on the day of the shooting, Wright told her that she "begged [appellant] to stop" and "tried to grab ahold of him and stop him" before he pushed her, unlocked the door, and killed Knighten.[17]

From this testimony and the remaining evidence in the record, we conclude that it was not manifestly unjust for the jury to determine that appellant did not act with adequate cause when killing Knighten; it was rational for the jury to determine that Wright's decision to not return outside was based on "cool

---

[17]The jury was free to reject appellant's contrary version of these events. *See Trevino v. State*, 157 S.W.3d 818, 822 (Tex. App.—Fort Worth 2005, no pet.).

30

reflection" and that appellant could have reasonably made the same decision. *See* Tex. Penal Code Ann § 19.02(a)(1); *see also Fry v. State*, 915 S.W.2d 554, 559 (Tex. App.—Houston [14th Dist.] 1995, no pet.) (explaining that an individual who fears for his or her life may still be capable of cool reflection). Moreover, based on Reed's testimony that appellant was "posturing himself as if he wanted to fight" when Knighten arrived at the apartment complex, the jury could have rationally rejected appellant's claim of sudden passion by finding that he anticipated the confrontation and that the passion, in part, was provoked by him. *See* Tex. Penal Code Ann. § 19.02(a)(2); *Smith v. State*, 355 S.W.3d 138, 149 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) ("A defendant may not rely on a cause of his own making, such as precipitating a confrontation, to support his argument that he acted out of sudden passion arising from adequate cause.").

We hold that the jury's decision to not find that appellant caused Knighten's death while under sudden passion and with adequate cause is not so against the great weight and preponderance of the evidence as to be manifestly unjust. *See Matlock*, 392 S.W.3d at 671. We overrule appellant's fifth issue.

31

## Conclusion

Having overruled all of appellant's issues, we affirm the trial court's judgments convicting him of murder and unlawful possession of a firearm.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and WALKER, JJ.

DAUPHINOT, J., concurs without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: April 23, 2015

FILE COPY

App. B.



# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-13-00556-CR

ARTIS LEON POLK JR.                                                                    APPELLANT

V.

THE STATE OF TEXAS                                                                          STATE

-----------

FROM THE 432ND DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 1305834D

-----------

## ORDER

-----------

We have considered the "Motion For Reconsideration Of Court Of Appeal Judgement" filed by appellant Artis Leon Polk, Jr., pro se.

It is the opinion of the court that the motion for rehearing or reconsideration should be and is hereby denied and that the opinion and judgment of April 23, 2015 stand unchanged.

The clerk of this court is directed to transmit a copy of this order to the appellant and the attorneys of record.

SIGNED July 9, 2015.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and WALKER, JJ.

2

App. C



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-13-00556-CR

ARTIS LEON POLK JR.                                        APPELLANT

V.

THE STATE OF TEXAS                                              STATE

------------

FROM THE 432ND DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 1305834D

------------

## ORDER

------------

We have considered the "Motion For Extension Of Time Pursuant To Rule 49.8 and 10.5(B) of the Texas Rules of Appellate Procedure (T.R.A.P. 49.8) With Leave of the Court" filed by appellant Artis Leon Polk Jr., pro se.

The motion is **GRANTED**. Appellant's motion for rehearing is due **Monday, June 8, 2015.**

The clerk of this court is directed to transmit a copy of the order to the appellant and the attorneys of record.

DATED May 21, 2015.

PER CURIAM